**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| F-SQUARED INVESTMENT MANAGEMENT, LLC, *et al.*,[1] | Case No. 15-11469 (LSS) |
| Debtors. | (Jointly Administered) |
| CRAIG JALBERT, IN HIS CAPACITY AS TRUSTEE FOR F2 LIQUIDATING TRUST, | |
| Plaintiff, | |
| vs. | |
| BRIAN FLANAGAN, MATTHEW LANDON, PATRICK COYLE, SCOTT KEARNEY, | Adv. No. 17-50738 (LSS) Adv. No. 17-50807 (LSS) Adv. No. 17-50815 (LSS) Adv. No. 17-50825 (LSS) |
| Defendants. | |

**TRUSTEE'S MEMORANDUM IN
OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

THE ROSNER LAW GROUP LLC
Frederick B. Rosner (DE No. 3995)
Jason A. Gibson (DE No. 6091)
824 N. Market Street, Suite 810
Wilmington, DE 19801
Tel: (302) 777-1111

-and-

BROWN RUDNICK LLP
William R. Baldiga (admitted *pro hac vice*)
Sunni P. Beville (admitted *pro hac vice*)
Sharon I. Dwoskin (admitted *pro hac vice*)
One Financial Center
Boston, MA 02111
Telephone: (617) 856-8200

*Counsel to the F2 Liquidating Trust*

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: F-Squared Investment Management, LLC (9247), F-Squared Investments, Inc. (0788), F-Squared Retirement Solutions, LLC (9247), F-Squared Alternative Investments, LLC (9247), F-Squared Solutions, LLC (9247), Squared Institutional Advisors, LLC (9247), F-Squared Capital, LLC (5257), AlphaSector LLS GP 1, LLC (3342), and Active Index Solutions, LLC (0788). The Debtors' address is Verdolino & Lowey, P.C., 124 Washington Street, Suite 101, Foxboro, Massachusetts 02035, Attn:  Craig R. Jalbert.

{00021626. }

**NATURE AND STAGE OF THE PLEADINGS**

1.      On July 7, 2017, Craig Jalbert, in his capacity as trustee for the F2 Liquidating Trust (the "Trustee") filed complaints (collectively, the "Original Complaints") against Brian Flanagan, Matthew Landon, Patrick Coyle, and Scott Kearney (collectively, the "Defendants"), former officers and an employee of F-Squared Investment Management LLC and its subsidiaries (collectively, the "Debtors"), seeking to avoid and recover no less than $418,375 in transfers made to the Defendants (collectively the "Transfers") as fraudulent, and constructively fraudulent, transfers under the Bankruptcy Code and applicable non-bankruptcy law.

2.      On September 28, 2017, the Defendants filed a motion to dismiss the Original Complaints [Adv. D.I. 6] (the "Original Motion") and a memorandum in support of the Original Motion [Adv. D.I. 7] (the "Original Memorandum").

3.      On October 19, 2017, the Trustee filed amended complaints (the "Amended Complaints" and, together with the Original Complaints, the "Complaints") against defendants Flanagan, Landon, and Kearney seeking to, among other things, avoid and recover certain of the Transfers as preferential transfers pursuant to the Bankruptcy Code.  The Amended Complaint also removed the constructive fraudulent transfer allegation as to Defendant Kearney.

4.      On November 2, 2017, the Insider Defendants filed a motion to dismiss the Amended Complaints [Adv. D.I. 16] (the "Second Motion" and, together with the Original Motion, the "Motions to Dismiss") and a memorandum in support of the Second Motion [Adv. D.I. 17] (the "Second Memorandum").[2]

---

[2]     Capitalized terms used herein shall the meanings ascribed to them in the Original Memorandum or the Second Memorandum.

5.    The Complaints assert  the following counts for relief:

- Against Defendants Coyle, Landon, and Flanagan (the "Fraudulent Transfer Defendants"):
    - avoidance of Transfers as constructive fraudulent transfers pursuant to Bankruptcy Code section 548(a)(1)(B);
    - avoidance of Transfers pursuant to Bankruptcy Code section 544, Mass. Gen. Laws 109A § 5, and Delaware Uniform Fraudulent Transfer Act § 1304(a)(1); and
    - recovery of the Transfers pursuant to Bankruptcy Code section 550.

- Against Defendants Flanagan, Landon, and Kearney (the "Insider Defendants"):
    - avoidance of Transfers as preferential transfers pursuant to Bankruptcy Code section 547(b); and
    - recovery of the Transfers pursuant to Bankruptcy Code section 550.

- Against Defendant Flanagan only:
    - disallowance of Claim pursuant to Bankruptcy Code section 502(d).

6.    The Trustee submits this memorandum of law in opposition to the Motions to Dismiss.

## SUMMARY OF ARGUMENT

7.    The Motions to Dismiss should be denied because the Trustee--a third party to the Transfers between the Debtors and the Defendants tasked with prosecuting claims for the benefit of the Debtors' creditors--has alleged sufficient facts to state colorable claims sounding in fraudulent transfer and preference under the Bankruptcy Code and applicable non-bankruptcy law.

8.    At this early juncture, the Trustee has sufficiently alleged that the Debtors did not receive reasonably equivalent value in exchange for the Transfers, particularly because reasonably equivalent value is a fact-intensive inquiry not suitable for a motion to dismiss.

9.    Additionally, as to the Insider Defendants, the Trustee has alleged sufficient facts to show insider status, such that certain Transfers to the Insider Defendants are avoidable

preferential transfers.[3]

### STATEMENT OF FACTS

10.    The Trustee's claims arise from the Debtors' payment of discretionary bonuses and tax distributions paid to the Defendants in the months prior to the Petition Date, as listed on Exhibit A to each Original Complaint, and summarized as follows:

- Defendant Coyle:
  - $87,125 discretionary bonus payment on February 13, 2015.
  - $1,221 tax distribution on March 30, 2015.[4]

- Defendant Flanagan:
  - $107,250.03 discretionary bonus payment on February 13, 2015.

- Defendant Kearney:
  - $100,000 discretionary bonus payment on December 29, 2014.

- Defendant Landon:
  - $125,000 discretionary bonus payment on February 13, 2015.

11.    These payments were in addition to the salaries paid to Defendants for "honestly, competently, and diligently performing their jobs." See Original Memorandum at ¶ 20.  The Complaints do not seek to recover any portion of the Defendants' salaries.

12.    Defendants, and all employees of the Debtors, were *eligible* to receive year-end discretionary bonuses.  However, the Debtors had no obligation to pay these bonuses to the Defendants.  Pursuant to the Employee Handbook, attached as Exhibit B to the Original Complaints, such bonuses were entirely discretionary and gratuitous--neither an individual

---

[3]    The Amended Complaints for Defendants Flanagan and Landon plead preferential transfer in the alternative to the fraudulent transfer counts.

[4]    Neither the Original Memorandum nor the Second Memorandum provides any argument as to why the Coyle Complaint should be dismissed with respect to the tax distribution.  Defendants merely state that "[t]he Trustee provides no allegations as to why or how this alleged transfer was fraudulent or otherwise avoidable." Original Memorandum at n.6.  The Coyle Complaint, at paragraphs 29-31, describes how and the tax distribution is avoidable; in particular, because the Debtors had no obligation to make the tax distribution, and the Debtors received no value in exchange for that transfer.  Thus, the Original Motion should be denied as to the tax distribution.

employee's performance, nor the Debtors' financial performance, nor any other factor required the Debtors to pay these bonuses.  The Debtors could pay them, or not pay them, in their sole discretion.

13.     Nonetheless, and despite the Debtors' insolvency (which the Defendants have not contested), the Debtors did pay the discretionary bonuses.  In late 2014 and early 2015, the Debtors paid out to their owners and employees discretionary bonuses[5] and tax dividends aggregating at least $38,183,988.21, ultimately to the detriment of the Debtors' other general unsecured creditors.  Between December 29, 2014 and March 30, 2015, Defendants received $419,375.03 of the bonus payments made by the Debtors.  See Original Complaints at Ex. A.

14.     On July 8, 2015 (the "Petition Date"), the Debtors filed their respective voluntary Chapter 11 petitions in this Court.

15.     On October 28, 2015, the Debtors and the official committee of unsecured creditors appointed in the case by the Office of the United States Trustee filed a joint plan of reorganization (the "Plan"), which was confirmed by the Bankruptcy Court on January 14, 2016 and soon thereafter became effective.

16.     Pursuant to the Plan, the F2 Liquidating Trust (the "Trust") was established for the purpose of, among other things, pursuing all causes of action not released, compromised and/or settled under the Terms of the Plan (the "Retained Causes of Action").  See Plan Arts. I(A)(73), IV(B)(1); F-Squared Liquidation Trust Agreement (the "Trust Agreement") [D.I. 457-1] at § 1.3.

17.     Pursuant to the Plan and the Trust Agreement, the Trustee was granted the power to "prosecute, settle, abandon or compromise the Retained Causes of Action."  Plan Art. IV(C);

---

[5]     The Bonus Payments include 401K match payments made by the Debtors on the amount of the bonuses paid to Defendants.  The Trustee does not seek to avoid 401K match payments on Defendants' salaries.

{00021626. }                    5

see Trust Agreement at §§ 2.2, 2.5.

18.     In late June and early July of 2017, the Trustee filed several proceedings  on behalf of the Trust seeking to recover bonuses paid to the Debtors' employees and tax and profit distributions paid to the Debtors' shareholders in order to fairly and ratably redistribute such payments so that all  of the Debtors' unsecured creditors would be treated more equitably, all in accordance with the Bankruptcy Code, the Plan, fairness  and equity.

### APPLICABLE LEGAL STANDARD

19.     Under Rule 8 of the Federal Rules of Civil Procedure, applicable here pursuant to Federal Rule of Bankruptcy Procedure 7008, a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  In re Grosso, 512 B.R. 768, 770 (Bankr. D. Del. 2014) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

20.     In deciding a motion to dismiss, the court "must accept all well-pleaded allegations in the complaint as true, and view them in the light most favorable to the plaintiff." In re Uni-Marts, LLC, 404 B.R. 767, 783 (Bankr. D. Del. 2009) (citation omitted).  The court "do[es] not inquire whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Borough of Moosic v. Darwin Nat'l Assurance Co., 556 F. App'x 92, 95 (3d Cir. 2014) (citation omitted); see also Phillips v. Cty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted) ("[O]n a Rule 12(b)(6) motion, the facts alleged

must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits[6].").

21.     Further, the court must read the factual allegations "as a whole and in context," Howard Hess Dental Labs. Inc. v. Densply Int'l Inc., 602 F.3d 237, 256 (3d Cir. 2010) (citations omitted), and must "draw all inferences from the facts alleged in the light most favorable to [the plaintiff]." See Phillips, 515 F.3d at 228; accord Kaymark v. Bank of Am., N.A., 783 F.3d 168, 174 (3d Cir. 2015) (citation omitted).  The moving party must show that the plaintiff has failed to "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that those elements exist." Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted).

22.     Thus, a motion to dismiss must be denied if the proffered grounds for dismissal require the court to "draw inferences against the [plaintiff]." Forman v. HBK Master Fund L.P. (In re Glencoe Acquisition Inc.), No. 12-12071(KG), 2015 WL 3777972, at *4 (Bankr. D. Del. June 16, 2015); see also Phillips, 515 F.3d at 233 (citation omitted) (motion to dismiss must be denied if "under any reasonable reading of the complaint, the plaintiff may be entitled to relief.").

23.     Additionally, Courts have found that where a complaint alleges specific facts such as dates, amounts, source, and transferee, a plaintiff has alleged sufficient facts to support a claim for constructive fraud. See In re AgFeed USA, LLC, 546 B.R. 318, 337 (Bankr. D. Del. 2016) ("[t]he complaint identifies the *date*, *amounts*, *source* and *transferee* of each of the transfers … At this stage of the proceedings, the Court concludes that the facts alleged by the

---

[6]    Additionally, Courts apply a more liberal pleading standard for third-party trustees who must "rely on secondhand knowledge." Global Link Liquidating Tr. v. Avantel, S.A. (In re Global Link Telecom Corp.), 327 B.R. 711, 717 (Bankr. D. Del. 2005)); see also Barry v. Santander Bank, N.A. (In re Liberty State Benefits of Delaware, Inc.), 541 B.R. 219, 233 (Bankr. D. Del. 2015); Buckley v. Merrill Lynch & Co. (In re DVI, Inc.), Adv. Pro. No. 08-50248 (MFW) 2008 WL 4239120, at *9 (Bankr. D. Del. Sept. 16, 2008).

{00021626. }                                              7

Trustee are sufficient to support a claim for constructive fraud under section 548(a)(1)(B).”). Unlike actual fraud, in the case of constructive fraud, “the transaction is presumptively fraudulent and all that need be alleged is that the conveyance was made without fair consideration while the debtor was functionally insolvent.” Id. at 336. (quoting Global Link Liquidating Tr. v. Avantel, S.A. (In re Global Link Telecom Corp.), 327 B.R. 711, 718 (Bankr. D. Del. 2005)).

## ARGUMENT

### A.   THE COMPLAINTS ADEQUATELY PLEAD LACK OF REASONABLY EQUIVALENT VALUE

24.   The Fraudulent Transfer Defendants’ challenge to the Complaints for their purported failure to plead lack of reasonably equivalent value should be denied, for several reasons.

### 1.   The Complaints Sufficiently Allege Lack of Reasonably Equivalent Value

25.   The Motions to Dismiss should be denied, first, because the Complaints allege sufficient information to outline the elements of the Trustee’s claims and to give the Fraudulent Transfer Defendants fair notice, and are not comprised of “formulaic recitation of the statutory elements of section 548.” See Original Memorandum at ¶ 4.  The Trustee attached to the Original Complaints as Exhibit A, a “Statement of Payments Issued” that includes the date of transfer, check number, if any, type of transfer (e.g. bonus), and total amount transferred.

26.   The Complaints also detail the facts and circumstances concerning the Debtors’ payment of the Transfers including, most notably, that the Debtors did not have any obligation to issue any bonuses because payments of the bonuses was *entirely discretionary*.  See the Debtors’ Employee Handbook, attached as Exhibit B to the Original Complaints, at page 10.

27.   Because the Debtors had no obligation to pay the Transfers, the Fraudulent Transfer Defendants did not provide reasonably equivalent value, despite the Fraudulent Transfer Defendants' claims to the contrary.  See Original Memorandum at ¶ 19.  Indeed, courts have consistently found that where a bonus is entirely discretionary, the debtor has no obligation to pay it, and the bonus is thus gratuitous.  In other words, a debtor receives *no value* for a discretionary bonus in addition to what the debtor received in exchange for the employee's base compensation.  See Official Comm. of Unsecured Creditors ex rel. Felt Mfg. Co. v. Foss (In re Felt Mfg. Co.), 371 B.R. 589, 648-49 (Bankr. D. N.H. 2007) (denying motion to dismiss a constructive fraudulent transfer claim where creditors' committee could establish that debtor was not legally obligated to make payments to employee, which would undermine employee's claim that such payments were made in exchange for reasonably equivalent value); Lichtenstein v. Buttery (In re Comput. Personalities Sys., Inc.), No. 01-14231 DWS, 2002 WL 31988134, at *4-5 (Bankr. E.D. Pa. Dec. 23, 2002) (finding that because the debtor was not contractually obligated to pay an employee's bonus, "the additional payments are a gratuity for which [debtor] received no greater value than it was entitled to receive in exchange for payment of [employee's] base compensation" and avoiding the bonus payments as fraudulent transfers); see also Madden v. Morelli (In re Energy Conversion Devices, Inc.), 548 B.R. 208, 218 (Bankr. E.D. Mich. 2016) (court found that debtor received reasonably equivalent value in exchange for bonus payment because that payment satisfied an obligation that the debtor owed to employee); Ogle v. JT Miller, Inc. (In re HDD Rotary Sales, LLC), 512 B.R. 877, 887 (Bankr. S.D. Tex. 2014) (where court found evidence of an enforceable agreement between the debtor and an employee to pay a bonus, the satisfaction of that obligation provided reasonably equivalent value for the debtor's payment of the bonus).

{00021626. }                                        9

28.     The Fraudulent Transfer Defendants contend that "the Trustee is unable to allege that Defendants did not earn their bonuses by honestly, competently and diligently performing their jobs.  There are, and can no [*sic*], allegations that the Defendants failed to carry out their responsibilities."  Original Memorandum at ¶ 20.  However, whether the Fraudulent Transfer Defendants were, or were not, honest, competent, and diligent employees, is simply irrelevant.  Because the bonuses were entirely discretionary, the Debtors could have chosen to pay the bonuses, or not, at their sole discretion, regardless of how the Fraudulent Transfer Defendants performed their jobs.[7]

29.     Viewing these facts as true and drawing all reasonable inferences in favor of the Trustee, the Court should conclude that the Trustee has sufficiently stated a claim for relief against the Fraudulent Transfer Defendants under federal and state constructive fraudulent transfer law.

    2.     *Lack of Reasonably Equivalent Value is a Fact-Intensive Inquiry Not Appropriate for a Motion to Dismiss*

30.     Second, whether a debtor received reasonable equivalent value in a transaction is a fact intensive inquiry not properly determined on a motion to dismiss.  See EPLG I, LLC v. Citibank, N.A. (In re Qimonda Richmond, LLC), 467 B.R. 318, 327 (Bankr. D. Del. 2012) ("[t]he issue of 'reasonably equivalent value' requires a factual determination that cannot be made on a motion to dismiss."); Charys Liquidating Tr. v. McMahan Sec. Co., L.P. (In re Charys Holding Co.), 443 B.R. 628, 638 (Bankr. D. Del. 2010) ("reasonably equivalent value is a fact intensive determination that typically requires testing through the discovery process.").  This is

---

[7]     Thus, the Fraudulent Transfer Defendants' case law is distinguishable, because in none of these cases was there an allegation that the bonuses were discretionary.  See Tow v. Bulmahn, 565 B.R. 361 (E.D. La. 2017) (no allegation that the bonuses were discretionary or that the debtor had no obligation to pay them); Scouler & Co., LLC v. Schwartz, No. 11-cv-06377NC, 2012 WL 1502762 at *6 (N.D. Cal. Apr. 23, 2012) (same); In re Hydrogen, LLC, 431 B.R. 337 (Bankr. S.D.N.Y. 2010) (same).

consistent with Third Circuit precedent that requires the "totality of the circumstances" be considered in determining whether reasonably equivalent value was given for a transfer.  In re R.M.L., Inc., 92 F.3d 139, 153 (3d Cir.1996); In re Glencoe Acquisition, Inc., 2015 WL 3777972 at *4.

31.   The Fraudulent Transfer Defendants' principal challenge to the Complaints is a factual disagreement not properly the subject of a motion to dismiss.   More specifically, the Fraudulent Transfer Defendants assert that "the Bonus Payments were a negotiated term of the Defendants' employment by the Debtors, the Bonus Payments were paid in accordance with the agreed terms, and before the April 6, 2015 Board meeting."   Original Memorandum at ¶ 14; see also Second Memorandum at ¶ 9 ("the terms of the Bonus Payments . . . were negotiated as part of the Defendants' employment agreements at the time they were hired.").   The Fraudulent Transfer Defendants are thus asking the Court to determine these contested facts and dismiss the Complaints on the merits.  See Original Memorandum at ¶ 23.  However, because it is premature for the Court to decide contested facts at this stage, the Court should deny the Motions to Dismiss.

32.   To support their own factual assertions, the Fraudulent Transfer Defendants submit documentsin the form of certain offer letters (the "Offer Letters") made by the Debtors. See Original Memorandum at Ex. A-C; Second Memorandum at Ex. B-C.  These Offer Letters, however, are not properly considered by the Court at this time.  In considering a motion to dismiss, the Court should consider only the "allegations contained in the complaint, exhibits attached to the complaint and matters of public record."  Schmidt v. Skolas, 770 F.3d 241 (3d. Cir. 2014) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d. Cir.1993)).  The Complaints neither described  the Offer Letters nor attached them as

{00021626. }                                              11

exhibits, and the Offer Letters are not matters of public record.  Nor are the Complaints "based" on the Offer Letters.  The Trustee has neither relied on the Offer Letters, nor do the Complaints make any reference to them.  The Fraudulent Transfer Defendants' claim that the Trustee "incorporated [the Offer Letters] by reference into the Complaint is thus incorrect. See Original Memorandum at ¶ 6.  Indeed, their introduction of the Offer Letters demonstrates only that the Complaints should survive the Motions to Dismiss, because the Fraudulent Transfer Defendants' challenge to the Complaints would require the Court to consider and accept the introduction of new factual allegations not contained in the Complaints themselves.

*3.*      *The Fraudulent Transfer Defendants' Factual Allegations  Support the Allegations in the Complaints*

33.      However, even if the Court were inclined to consider the Offer Letters introduced by the Fraudulent Transfer Defendants at this juncture, the Offer Letters support the Trustee's allegations and confirm that the Motions to Dismiss should be denied.  The following language appears in each of the Offer Letters:

> In addition, you will be *eligible* for an annual cash bonus.  This bonus will be *entirely discretionary* in nature, and set for a *target* amount of [x]% of base salary.

> See Original Memorandum at Exhibits B-D (emphasis added).

34.      The Fraudulent Transfer Defendants assert that "the Bonus Payments were paid pursuant to, and in accordance with, terms negotiated and agreed between the Debtors and Defendants in the Offer Letters . . . ." Original Memorandum at ¶ 21.  This is a factual assertion not properly considered until trial.  Nonetheless, the Offer Letters themselves demonstrate that this assertion is false.  To the extent any negotiation between the Fraudulent Transfer Defendants and the Debtors is reflected in the Offer Letters, as the Fraudulent Transfer Defendants claim,

such negotiation resulted only in the *eligibility* to receive a bonus at the Debtors' sole discretion. Nor is the fact that the Debtors paid these bonuses evidence that they had any obligation to do so.

35.     The Fraudulent Defendants also claim that "the Offer Letters contain specific targets and amounts for the bonuses that each of the Defendants would receive in return for satisfactory performance of their jobs." This is also incorrect. While the Offer Letters contain a specific target amount that might be paid as a discretionary bonus, the Offer Letters do not obligate the Debtors to pay the Fraudulent Transfer Defendants these, or any, amounts. The Offer Letters merely state that the Fraudulent Transfer Defendants would be *eligible* for discretionary bonuses. Nor do the Offer Letters state that satisfactory job performance is a condition to receiving the bonus payments--indeed, the Offer Letters recite that the bonus is "entirely discretionary in nature." In short, the Offer Letters simply do not evidence any obligation by the Debtors to pay the discretionary bonuses.

**B.     THE AMENDED COMPLAINTS ADEQUATELY PLEAD INSIDER STATUS**

36.     The Insider Defendants also argue that the Amended Complaints should be dismissed because, they allege, their terms of employment did not include management responsibilities and because the Debtors' statements of financial affairs (the "SOFAs") do not identify the Insider Defendants as insiders. Because neither of these arguments is availing at this stage of the proceedings, the Motions to Dismiss should be denied.

*1.     The Insider Defendants' Job Titles Create a Presumption of Insider Status*

37.     In determining whether an individual is a statutory insider, the precedent in this district is that "[a] person holding an officer's title is presumptively an officer and, thus, an insider." In re Foothills Texas, Inc., 408 B.R. 573, 574 (Bankr. D. Del. 2009) (Sontchi, J.) (finding that employees holding the title of "vice president" were presumptively officers of the

debtors). "A party seeking to rebut that presumption must present evidence sufficient to establish that the person holds the title of an officer in name only and, in fact, does not meet the substantive definition of the same, i.e., he or she is not taking part in the management of the debtor." Id. at 574-75.

38. The Amended Complaints allege that each of the Insider Defendants held the title of "Senior Vice President." Amended Complaints at ¶ 7. The Insider Defendants' job titles are facts, not labels or conclusions. As Judge Sontchi held in Foothills Texas, job titles are sufficient facts to establish a presumption that the Insider Defendants are insiders. Accepting such allegations as true, as required at the motion to dismiss stage, this Court must therefore presume that the Insider Defendants are insiders.

39. The Insider Defendants erroneously state that the Amended Complaints insufficiently allege insider status because they "allege no specific management responsibilities that [Insider] Defendants held, but instead merely parrot[s] the ruling of the Foothills Texas decision based on the [Insider] Defendants' job titles. . ." See Second Memorandum at ¶ 24. However, the ruling of Foothills Texas is that the title of an officer *alone* is sufficient to presume insider status, and that it is the defendants, rather than the plaintiff, who must introduce evidence of a *lack* of management responsibilities in order to rebut this presumption. Foothills Texas, 408 B.R. at 574-75. At trial, the Insider Defendants will have an opportunity to rebut this presumption, but dismissal is not appropriate where the Trustee has alleged sufficient facts in the Amended Complaints (here, the fact that the Insider Defendants were Senior Vice Presidents of the Debtors) to state a claim that the Insider Defendants were insiders and received preferential transfers during the one-year lookback period for insiders.

2. *The Debtors' SOFAs are not Dispositive of Insider Status*

{00021626. }                                    14

40.   The Insider Defendants further argue that because the Debtors' SOFAs failed to list the Insider Defendants as insiders, they are definitively not insiders.   See Second Memorandum at ¶¶ 26-27.   However, SOFAs are not the definitive arbiter of who is and who is not an insider.   Indeed, the decision the Insider Defendants rely on for this proposition states instead that a debtor's statement of financial affairs is "not dispositive" in determining insider status.   Hyman v. Korshak and Assocs., P.A. (In re Island One, Inc.), Adv. No. 6:12-ap-00156-KSJ, 2013 WL 652562, at *3 (Bankr. M.D. Fla. Feb. 22, 2013).   Further, while a debtor's schedules and statements of financial affairs are sworn statements, they do not constitute admissions *against a trustee*.   See, e.g., In re Seltzer, 529 B.R. 385, 393 (Bankr. M.D. Ga. 2015).   Thus, the absence of the Insider Defendants from the Debtors' SOFAs might show, as the Insider Defendants state, that the "*Debtors* did not identify any of the [Insider] Defendants as directors or officers or as insiders," see Second Memorandum at ¶ 26 (emphasis added), or it might show that the SOFAs are incomplete, but they are not and cannot be the final word on whether the Insider Defendants were in fact insiders.   See Foothills Texas, 408 B.R. at 584 n.52 (noting that the statement of financial affairs "is irrelevant" because it is merely "additional evidence of the already established conclusion that they are presumptively officers [and] does not relate to the inquiry into whether they are, in fact, participating in management.").

41.   Viewing the facts alleged in the Amended Complaints as true and drawing all reasonable inferences in favor of the Trustee, the Court must therefore find that the Trustee has sufficiently stated a claim for relief against the Insider Defendants for avoidance of preferential transfers.

## **CONCLUSION**

42.    Based on the foregoing, the Trustee respectfully requests that the Motions to

Dismiss be denied.

Dated: November 16, 2017
      Wilmington, Delaware                  **THE ROSNER LAW GROUP LLC**

                                        */s/ Frederick B. Rosner*
                                        Frederick B. Rosner (DE 3995)
                                        Jason A. Gibson (DE 6091)
                                        824 N. Market Street, Suite 810
                                        Wilmington, DE 19801
                                        Telephone: (302) 777-1111
                                        Email: rosner@teamrosner.com

                                            -and-

                  **BROWN RUDNICK LLP**
                  William R. Baldiga, Esq.
                  Sunni P. Beville, Esq.
                  Sharon I. Dwoskin, Esq.
                  One Financial Center
                  Boston, MA 02111
                  Telephone: (617) 856-8200
                  sbeville@brownrudnick.com
                  sdwoskin@brownrudnick.com

                  *Counsel for the F2 Liquidating Trust*

62890031 v5

{00021626. }               16