**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| F-SQUARED INVESTMENT MANAGEMENT LLC, *et al.*[1] | Case No. 15-11469 (LSS) |
| Debtors. | |
| Craig Jalbert, in his Capacity as Trustee for F2 Liquidating Trust, | Adv. No.: *See* Exhibit 1 |
| Plaintiff, | |
| vs. | |
| Defendants Listed on Exhibit 1, | |
| Defendants. | |

**MOTION BY TRUSTEE FOR: (A) RECONSIDERATION
OF ORDER GRANTING IN PART AND DENYING IN PART THE MOTION OF THE
TRUSTEE EXTENDING TIME TO EFFECT SERVICE AND (B) AMENDED RELIEF**

Craig Jalbert, in his capacity as Trustee for the F2 Liquidating Trust (the "Trustee") of

the Liquidating Trust established under the *Joint Plan of Liquidation Under Chapter 11 of the*

*Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors*

(the "Plan")[2] [D.I 478] and the *Order Confirming Joint Plan of Liquidation Under Chapter 11 of*

*the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured*

*Creditors* (the "Confirmation Order") [D.I. 486], by and through his undersigned counsel, hereby

submits this *Motion for: (a) Reconsideration of Order Granting in Part and Denying in Part the*

*Motion of the Trustee Extending Time to Effect Service and (b) Amended Relief* and the related

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: F-Squared Investment Management, LLC (9247), F-Squared Investments, Inc. (0788), F-Squared Retirement Solutions, LLC (9247), F-Squared Alternative Investments, LLC (9247), F-Squared Solutions, LLC (9247), Squared Institutional Advisors, LLC (9247), F-Squared Capital, LLC (5257), AlphaSector LLS GP 1, LLC (3342), and Active Index Solutions, LLC (0788). The Debtors' address is 124 Washington St., Foxboro, MA 02035 Attn: Craig R. Jalbert.

[2] Capitalized terms not otherwise defined herein shall have the meanings scribed to them in the Motion.

{00021880. }

*Declaration of Jason Gibson* (the "Gibson Decl.") in support thereof, pursuant to Rules 7052, 9023 and 9024 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and respectfully states as follows:

### Jurisdiction

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The legal predicates for the relief requested hereby are Rules 7052, 9023 and 9024 of the Federal Rules of Bankruptcy Procedure.

### Relevant Facts

2.    On July 8, 2015, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  Following confirmation of the Plan, the Trust was established to prosecute chapter 5 causes of action, seek recovery from creditors or others who were paid in full, and re-distribute those funds ratably to all general unsecured creditors.  The ratable treatment of similarly situated creditors is one of the fundamental purposes of the Bankruptcy Code.

3.    Toward that end, the Trustee commenced 215 adversary proceedings, many against the Debtors' former officers, directors and employees who had received bonus, tax and/or profit distributions as high as $2.5 million (collectively, the "Adversary Proceedings"). The face value of the Adversary Proceedings aggregates over $42 million.

4.    The Adversary Proceedings were all timely filed between June 30 and July 7, 2017. The statute of limitations for filing avoidance actions thereafter expired on July 8, 2017. The Rosner Law Group LLC ("RLG") was solely responsible for preparing and serving Summonses for the Complaints.  The details of the manner by which RLG prepared and mailed

{00021880. }                                           2

out the Summonses, Complaints and other process in accordance with applicable law and local procedure is set forth in the Gibson Decl.

5.      Fed. R. Bankr. P. 7004(m) affords an initial 90-day time period for service of process.    Accordingly, given the timeframe over which the Complaints were filed, the corresponding 7004(m) deadline expired between September 28, 2017 and October 4, 2017 (the "Service Deadline").  Although the Summonses, Complaints and other necessary process in all Adversary Proceedings were sent by first class postage pre-paid mail on August 11, 2017 to all defendants, well before the expiry of the initial 90-day Rule 7004(m) periods, it is not certain, and remains uncertain, whether *all* defendants were properly and duly served.[3]  For example, some mail containing process were returned to RLG due to stale service addresses (the "Returned Parties").  A few others were not returned but the targeted defendants were non-responsive (the "Non-Responsive Parties"), so in those instances it is not possible for the Trustee to determine at this point with certainty whether the defendant was actually served; e.g., the current occupant could have discarded the summons and complaint; some defendants have received process but deny it was mailed to their current addresses[4] and some defendants now challenge (through a Cross Motion and MTD for Defective Service, discussed *infra*) the validity

---

[3] Plaintiff emphasizes the distinction between *mailing*, the means by which service *may* be accomplished, and effective service, confirmation or some form of acknowledgement that the targeted defendant received process at his or her *current* address; e.g., a filed answer admitting a service address or a failure to contest service in a first responsive pleading. *See* Bankruptcy Rule 7012(h)(addressing waiver of Rule 12(b)(2)-(5) defenses).

[4] *See, e.g.,* Adv. No. 17-50757 against Emily Meyer. There, the Defendant retained counsel, sought dismissal, and maintained that service was never effected upon her because, *inter alia*, process was not mailed to her current address.  In her MTD for Defective Service, Defendant contends:  "Additionally, Defendant has not received *any* documents related to the Adversary Proceeding against her.  The Trustee mailed these documents to Defendant's old address, where she has not resided in almost two-and-one-half years, and from where mail no longer is being forwarded." (*emphasis* added)[Adv. Pro. No. 17-50757; DI 12; MTD at ¶4; filed 11/03/17].  Although it is unclear how, if "Defendant has not received *any* documents related to the Adversary Proceeding …" (*emphasis* added), she still was able to retain counsel and file a motion to dismiss based on process she denies ever receiving. (hereinafter, "Emily Meyer").

of *all* of the summonses, this Court's personal jurisdiction over them and therefore the validity of the Complaints.

6.       Accordingly, out of an abundance of caution and to preserve the full value of the Adversary Proceedings to the Trust for the benefit of all creditors, the Trustee timely filed on September 27, 2017 a 4(m) Motion to extend the Service Deadline for all Adversary Proceedings.   The 4(m) Motion was filed in each Adversary Proceeding and mailed to all defendants.  The 4(m) Motion was the Trustee's first request for relief under Rule 7004(m).

7.       By the 4(m) Motion and the amended relief sought herein, the Trustee seeks to ensure that he is able to re-serve or otherwise remedy any service deficiencies alleged by any of the Defendants.  No prejudice will result to the Defendants if the Motion is granted.  If the Motion is not granted, the Trustee potentially could be time-barred from recovering on the avoidance claims for the benefit of the Trust.  Such a result would be an unjust windfall to some defendants and patently unfair to other defendants and creditors of the Trust seeking the maximum distribution from the Trust.  Denying the Trustee the right to remedy service deficiencies also is contrary to Third Circuit precedent that provides that whenever possible matters should be decided on the merits and estates should not be subject to forfeitures except in narrow circumstances not present here.

8.       The 4(m) Motion was unopposed except for a single objection.  The Objecting Defendants were carved out from the proposed order granting the relief requested.[5]  A hearing

---

[5] Defendants who filed an Objection to the 4(m) Motion are in adversary proceedings nos. 17-50710, 17-50727, 17-50737, 17-50771, 17-50781, 17-50796, 17-50801, 17-50810, 17-50814, 17-50830, 17-50836, 17-50838, 17-50840, and 17-50867 (collectively, the "Objecting Defendants").  The Trustee filed an Answering Brief to the Objection and the Objecting Defendants filed their Reply, and the matter is *sub judice*.  The Objecting Defendants also filed a Cross Motion to Dismiss the Complaints for Defective Service (the "Cross Motion").   The Cross Motion seeks relief similar to a number of motions later filed to dismiss complaints for defective service.  Motions to dismiss for defective service were filed in the following adversary proceedings:  Rooker Price (17-50710), Adam Graves (17-50727), Brian Doherty (17-50737), John Greg Whitaker (17-50771), Kate Kinlin (17-50781), Lisa Quinn (17-50796), Mark Ramunno (17-50801), Michael Fardy (17-50810), Nicole Miller (17-50814), Stephen Degnan (17-

was held on the 4(m) Motion on November 9, 2017.  The Court granted the relief only for the Returned Parties and denied the 4(m) Motion for the non-objecting defendants and the Non-Responsive Parties.  A true and correct copy of the *Order Granting in Part and Denying in Part the Motion of the Trustee Extending Time to Effect Service* (the "4(m) Order") and the transcript from the hearing (hereinafter "Tr.") are attached hereto respectively as **Exhibits A and B**.

*After the 4(m) Motion was Filed, Certain Defendants Filed MTD for Defective Service Challenging the Validity of All Summonses RLG Prepared and Mailed Out*

9.      Since the filing of the 4(m) Motion, certain defendants filed MTD for Defective Service contending that the summonses in their respective adversary proceedings, and arguably *all* Adversary Proceedings, are defective, the Court never obtained personal jurisdiction over the defendants, and the Complaints therefore should be dismissed.  Although the Trustee opposes these motions (and will point out in summary form herein the bases for his objection), the challenge the Cross Motion and MTD for Defective Service pose to service of the Complaints is grounds alone to extend the 4(m) deadline in *all* Adversary Proceedings.

10.      This Motion is timely filed and seeks: (a) reconsideration of the 4(m) Order and (b) amended relief by the Court based on additional facts.

### The Trustee Seeks:  (a) Reconsideration of the 4(m) Order and (b) Amended Relief

11.      The Trustee seeks reconsideration of the 4(m) Order.  It is respectfully submitted that reconsideration of the 4(m) Order is factually and legally supported by the facts of this case and guiding case law in this Circuit and elsewhere and, for the reasons stated below, the Service

---

50830), Walter Hartford (17-50836), William McNamara (17-50838), Zachary Zeltsan (17-50840), Shannon Price (17-50867), Alexey Panchekha (17-50730), Robert Gottlieb (17-50862), Svitlana Senenko (17-50845), Emily Meyer (17-50757), Burnaev Evgeny (17-50667), William Monahan (17-50839), and Elena Zarubina (17-50698) (collectively, the "MTD for Defective Service").  Although the 4(m) Motion is extended as against the Objecting Defendants while the matter is *sub judice,* the Trustee now seeks to extend the 4(m) deadline for the Objecting Defendants until the MTD for Defective Service is adjudicated by *final order*.  Because the relief requested by the Cross Motion is substantially similar to the MTD for Defective Service, they should be adjudicated together and the respective Service Deadlines should track the same.

Deadline in all Adversary Proceedings therefore should be extended through the entry of a final order adjudicating the Cross Motion and MTD for Defective Service.

12. Notwithstanding a diligent review of the Debtors' books and records, the Trustee is aware that some of the service addresses utilized to serve defendants are not their current addresses and these defendants have not responded. Rather than devoting time and estate resources pursuing the entry of a default and default judgment before this Court, domesticating that default judgment in the state court where the defendant may reside, and then seeking to enforce the state judgment only to later have the default judgment vacated for deficient service, the Trustee respectfully requests more time now to effectuate valid service. The Trustee's goal is not potentially infirm default judgements; it is engaging with all defendants on the merits about the Adversary Proceedings. The Court also should consider the additional fact that, following the filing of the 4(m) Motion, certain defendants filed a Cross Motion and the MTD for Defective Service that challenged the validity of the Complaints based on alleged defective Summonses. To address this, the Trustee seeks amended 4(m) relief. It is respectfully requested that the Court extend the Service Deadline for all defendants in Adversary Proceedings to a date that is sixty (60) days after the entry of a final order adjudicating the Cross Motion and the MTD for Defective Service.

13. Simply put, if the Trustee is aware of any service deficiencies by reason of the Non-Responsive Parties or that arise in the context of a motion to dismiss,[6] or if Court may rule upon any service deficiencies in the context of the Cross Motion, MTD for Defective Service or the Objecting Defendants, the Trustee should be permitted a reasonable opportunity to cure any such deficiency. The Trustee has acted in good faith, diligently and is confident that with additional time due and valid service will be effectuated on all defendants. The requested

---

[6] *See, e.g.*, Emily Meyer.

{00021880. }                                    6

extension is consistent with Third Circuit law that favors matters being adjudicated on the merits. Accordingly, the Service Deadline should be extended for all defendants in all Adversary Proceedings for a period of 60 days following the entry of a final order adjudicating the Cross Motion and MTD for Defective Service.

**Applicable Legal Standard**

14.     Rule 52 of the Federal Rules of Civil Procedure, incorporated by Bankruptcy Rule 7052 provides, in relevant, part as follows:

> (a)(5) Questioning the Evidentiary Support.  A party may later question the sufficiency of the evidence supporting the findings, whether or not the party requested findings, objected to them, moved to amend them, or moved for partial findings.
>
> (b) Amended or Additional findings.  On a party's motion filed no later than 28 days after entry of judgment, the court may amend its findings – or make additional findings – and may amend the judgment accordingly.  The motion may accompany a motion for new trial under Rule 59.

Fed. R. Civ. P. 52(a)(5) and (b).

15.     Rule 52(b) permits a court to amend its findings or make additional findings and amend the judgment accordingly.  The purpose of the motion is to allow a court to correct manifest errors of law or fact, or in limited circumstances, to present newly discovered evidence. *Guiterrez v. Ashcroft*, 289 F. Supp. 2d. 555, 561 (D. N.J. 2003), *aff'd*, 2005 U.S. App. LEXIS 4502 (3d Cir. 2005); *Edwards v. Wyatt*, 2007 U.S. Dist. LEXIS 2984 at *4 (E.D. Pa. Jan. 8, 2007).

16.     Rule 9023 incorporates Rule 59 of the Fed. R. Civ. P.  Rule 59(e) permits a party to move to alter or amend a judgment.  The Third Circuit has stated that the purpose of Rule 59 is "to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 98 (3d Cir. 1985).  "A motion under Rule 59(e) is a device to relitigate the original issue decided by the district court, and used to allege legal error." *U.S. v.*

*Fiorelli,* 337 F.3d 282, 289 (3d Cir. 2003) (internal citations omitted).  Motions brought pursuant to Rule 59 may be on "the need to correct clear error [of law] or prevent manifest injustice." *North River Ins. Co. v. Cigna Reinsurance Co*., 52 F.3d 1194, 1218 (3d Cir. 1995).  *See also Syracuse v. Orion Refining Corp. (In re Orion Refining Corp.),* 2006 Bankr. LEXIS 1657 (Bankr. D. Del. Aug. 8, 2006)("A motion for reconsideration is not specifically addressed in the Federal Rules of Civil Procedure; rather, such motions generally fall within the parameters of Rule 59(e), which allows a party to file a motion to alter or amend a judgment.").

17.    A motion for reconsideration should be granted if the moving party shows" the need to correct a clear error of law or fact to prevent manifest injustice."  *St. Louis v. Morris*, 2006 U.S. Dist. LEXIS 69108, at *2 (D. Del. Sept. 22, 2006).  A court should keep an open mind in considering reconsideration and should not hesitate to grant the motion if necessary to prevent manifest injustice or clear legal error.  *Karr v. Castle*, 768 F. Supp. 1087, 1093 (D. Del. 1991), *aff'd sub nom., United States v. Carper*, 22 F.3d 303 (3d Cir. 1994).

18.    Bankruptcy Courts have held that they may reconsider prior rulings upon a showing of (1) mistake, inadvertence, surprise, or excusable neglect, (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b) … or (6) any other reason that justifies relief.  *See* Fed. R. Civ. P. 60; *see also* Fed. R. Bankr. P. 9024.

19.    A motion for reconsideration pursuant to Bankruptcy Rule 9024 (incorporating Fed. R. Civ. P. 60) may be granted on the following grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion …; or (3) the need to correct a clear error of law or fact or to prevent manifest

injustice." *In re W.R. Grace & Co.*, 398 B.R. 368, 372 (D. Del. 2008) (citing *Max's Seafood Café by Lou Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)).

> "The Court should reconsider a prior decision where it appears it has overlooked or misapprehended some factual matter that might reasonably have altered the result reached by the Court. While … a motion for reconsideration should not be used to reargue the facts or applicable law, it is appropriate when the facts were presented but overlooked by the Court."

*Off. Comm. of Unsec. Creditors v. Catholic Diocese of Wilmington, Inc.* (*In re Catholic Diocese of Wilmington, Inc.*), 437 B.R. 488, 490 (Bankr. D. Del. 2010) (internal citations omitted).

20.    The 4(m) Order was entered on November 27, 2017.  The relief requested by this Motion is timely filed.

## Argument

21.    It is respectfully submitted the Court should reconsider whether the Trustee demonstrated good cause for the requested 4(m) extension and whether the extension therefore should have been automatically granted.  In the alternative, the Court should reconsider whether it should have exercised its discretion in favor of extending the Service Deadline.

**The Court Incorrectly Conflated the Act of Mailing the Summonses and Complaints with Effective Service of the Summonses and Complaints**

22.    In bankruptcy, plaintiffs enjoy the privilege of relying upon first class mail to attempt service on defendants.  Fed. R. Bankr. P. 7004(b) provides that service "***may be made*** within the United States by first class mail postage prepaid …." (***emphasis*** added).  But the privilege of being able to serve by mail is accompanied by rigid adherence to the strictures of the rule.  For example, the address of the defendant *must* be his or her current address, not the last known address.  *Compare* Rule 7004 *with* Rule 7005.  The envelope cannot be addressed to a PO Box.  *See* Rule 7004(b)(3) and *In re Meridian Automotive Systems–Composite Operations*, 340 B.R. 740 (Bankr. D. Del. 2006).  Accordingly, while a plaintiff may mail a complaint to a

{00021880. }                                    9

defendant and thereby *attempt* service, there are many potential pitfalls, and the mere act of mailing should not be equated with *effective* service of the complaint upon the defendant.

23.      There are potential deficiencies in the service addresses used in these Adversary Proceedings.  Because most of the defendants are former directors, officers and employees of the Debtors who received bonuses, and the Debtors went bankrupt and ceased operating, these individual defendants may have moved to an unknown address.  The Trustee took over the Debtors' business records two years ago, largely in disarray that contained only stale addresses for many defendants.  For example, process may have been served at a last known address, not necessarily the defendant's *current* address, and been forwarded to a defendant.  In other cases, process was not forwarded on at all but may have been discarded by the current occupant.  In still others, the defendant may have retained counsel but still deny service was effectively made at a current address.

24.      Based on the foregoing, the Court should reconsider the factual and legal conclusion that the Trustee served all defendants by the act of mailing or all defendants have been served.  It is respectfully submitted that the initiating act of mailing process to the defendants, which is the means by which service *may* be accomplished in bankruptcy adversary proceedings, is not the factual or legal equivalent of *effective service* on a defendant.  Based on the record made at the hearing and the Gibson Decl., the Court should find that ample cause exists to extend the Service Deadline.

25.      In the alternative, the Court should exercise its broad discretion and extend the Service Deadline.  The Complaints have merit and the Trustee has and will continue to make good faith efforts to try to effectuate service.  This is the Trustee's first request for 4(m) relief. Applicable Third Circuit law favors adjudicating disputes on their merits.  The Trustee had to file

over two hundred complaints working with a huge volume of business records, largely in disarray, with stale addresses for former individual directors, officers and employees, who received over $42 million in bonuses. The Trust and its creditors should not be forced to endure the loss of millions of dollars in assets because of an initial service deadline.

**The Trustee Has Demonstrated Good Cause and the Court Should Therefore Extend the 7004(m) Deadline.**

26.     The Trustee has demonstrated good cause to extend the Service Deadline. Among other things the Court should consider are the following:

- There are 215 defendants.

- The vast majority of defendants are former directors, officers and employees of the Debtors; i.e., individuals. Individuals move, especially when they worked for a company that ceased doing business. The Trustee inherited the Debtors' books and records, which were in disarray. At the time the Trustee initiated the Trust's causes of action against the individual defendants (two years after the bankruptcy filing), many of the addresses may be stale. The Debtors' books and records might not reflect an individual defendant's current address. In addition, because many of the individual defendants were paid in full they did not file proofs of claim with updated addresses.

- Even when a mailing was not returned, effective service on the defendant is not guaranteed. The service address could be a last known address forwarded to a current address. That may not be sufficient or at least subject to challenge. Alternatively, the defendant could have moved and the current occupant could have thrown out the process. In other cases, the current address for the defendant might not be known but the defendant nonetheless somehow received notice and process, retained counsel and sought dismissal of the Complaint on the grounds, *inter alia*, that service on the current address was not received.[7]

- For other defendants, upon receiving the Summons and Complaint in the mail, they reached out to Plaintiff's counsel by phone or email to find out what the lawsuit was about. On being informed, they requested additional time to seek counsel. In every instance, the Trustee granted a request for additional time to answer or otherwise respond to the Complaint *without* any conditions attached; e.g. acknowledgement of receipt of process, because these were *pro se* individual defendants.

- The Complaints are not frivolous.

---

[7] *E.g.*, Emily Meyer.

- The statute of limitations has expired.

- The Trustee remains diligent in attempting service by mail on defendants.

27.   It is respectfully submitted that all of these facts constitute good cause to extend the Service Deadline.  Based on the foregoing, the Trustee urges the Court to reconsider its prior ruling and determine that good cause exists to extend the Service Deadline.  This is consistent with Third Circuit law that matters should be adjudicated on the merits. *See Sun Healthcare*, at *5 ("Courts prefer to avoid default judgments and dispose of cases on the merits."(*citing Tozer v. Krause Milling Co.*, 189 F.2d 242, 245 (3d Cir. 1951); *In re USN Communications, Inc.*, 288 B.R. 391, 398 (Bankr. D. Del. 2003)).  If the Court finds good cause exists, it is duty bound to extend the Service Deadline.

28.   In the alternative, the Trustee urges the Court to reconsider its prior ruling, exercise its discretion and extend the Service Deadline.  The Trust should not be punished because the Trustee exercised his discretion and granted mostly *pro se* individual defendants additional time to answer or otherwise respond, including challenging service, because they were acting *pro se*.  The Trust and creditors of the Trust should not be punished with the potential loss of valuable adversary proceedings because the Trustee reasonably needs additional time to effect and/or confirm service.  Nor should the Trustee be faulted for electing first to confirm that valid service was made on all defendants before pursuing defaults.  Seeking to enforce a default obtained based on a flawed service address is a waste of the Court's, plaintiff's and defendant's time.[8] Defendants have a right to know they are being sued now so, *inter alia*, they can preserve records.  Similarly, the Trustee is not interested in keeping the Trust open *ad infinitum* to address re-opened default judgments.

---

[8] This is what happened in *Sun Healthcare*.  After the default judgments were vacated, the Court afforded plaintiff an additional 30 days to effect service, long after the initial Rue 7004(m) period had expired.

**The Court Should Consider New Facts as Part of this Motion for Reconsideration**

29.     The Court is also permitted in a motion for reconsideration to consider new facts or evidence. Since the 4(m) Motion was filed, the Cross Motion and MTD for Defective Service were filed. In both motions, dismissal of the Complaints is sought on the same legal theory: the Summons were not issued in accordance with Rule 4(b)[9] of the Fed. R. Civ. P. and the Court lacks personal jurisdiction over the defendants. Defendants rely on Third Circuit law[10] applying

---

[9] L.R. 7004-2 governs. Rule 4(b) does not apply at all to the Summonses prepared in these Adversary Proceedings. *See Gibson Decl.* Rule 4(b) provides:

"[o]n or after filing the complaint, the plaintiff may present a summons to the clerk for signature and seal. *If the summons is properly completed, the clerk must sign, seal and issue it to the plaintiff for service on the defendant[]"* (*emphasis* added).

But, as noted, Rule 4(b) does *not* govern either the preparation or service of the summonses in these Adversary Proceedings. Per L.R. 7004-2, which does govern, no summons was (or had to be) *issued* by the Clerk. Therefore, any discussion in the Cross Motion or MTD for Defective Service of the *issuance* of a summons by the Clerk or a summons issued by "plaintiff's attorney being a nullity" has no application to the Summonses prepared in these Adversary Proceedings. To the contrary, L.R. 7004-2, entitled, **Summons and Notice of Pretrial Conference in an Adversary Proceeding,** provides:

"A party or attorney filing a complaint or third-party complaint shall prepare a Summons and Notice of Pretrial Conference in an Adversary Proceeding (Local Form 108). The pretrial conference date shall be a date that is at least thirty-five (35) days and not more than ninety (90) days from the date of service of the summons and complaint and set in accordance with L.R. 7004-2(a) and (b) below. The completed summons and certificate of service shall be filed in the adversary proceeding. The party or attorney filing the complaint or third-party complaint shall be responsible for serving the summons and complaint." L.R. 7004-2.

One notable difference between Rule 4(b) and L.R. 7004-2 is that the Clerk of the Court under the Local Rule does not issue the summons and is removed from the entire process of preparing the summons. Accordingly, plaintiff's counsel is not required to in person present to the Clerk literally hundreds of adversary complaints for her inspection and wait until she signs and affixes this Court's seal to each one, at best a cumbersome and time consuming process. Under the Local Rule, the Clerk no longer "issues" the summonses at all, and thereby is freed up to attend to more substantive work.

[10] Defendant's reliance on the Third Circuit's decision in *Ayres v. Jacobs & Crumpler, P.A.*, 99 F.3d 656 (3d Cir. 1996) is misplaced. In *Ayres*, the process required there for plaintiff's counsel to obtain a summons is completely different than the process applicable here, as set forth in L.R. 7004-2. As described in *Ayres*, the attorney has to obtain "a summons signed by the Clerk." *Id.* at *568. "Requiring the Clerk to sign and issue the summons assures the defendant that the process is valid and enables the Clerk to collect whatever filing fees are required." *Id.* at *569. Under L.R. 7004-2, the Clerk is entirely removed from the process of preparing a summons and any filing fees are automatically deducted from a credit card on file with the Court at the time the Complaint is filed. Defendant's reliance on *Barrett v. City of Allentown*, 152 F.R.D. 46 (E.D. Pa. 1993) is equally misplaced. The court found that Rule "4(b) … requires that a summons be signed *and* sealed by the Clerk of the Court. Failure to have a summons signed by a clerk is a serious deficiency which cannot be overlooked." *Barrett*, at *49. Under L.R. 7004-2, the Clerk of the Court no longer signs the Summons, affixes the Court's seal to it or is otherwise involved in the process of preparing the Summons.

Rule 4(b), and incorrectly contend the rule applies to the Summonses prepared in these Adversary Proceedings.  It does not.  However, if the Court accepts Defendant's argument, then service *was* defective and the Court potentially lacks personal jurisdiction over all defendants. This is sufficient grounds alone to extend the Service Deadline until a final order is entered adjudicating the Cross Motion and MTD for Defective Service.

30.    In *Petrucelli v. Bohringer and Ratzinger*, 46 F.3d 1298 (3d Cir. 1995) ("*Petrucelli*"), the Third Circuit first interpreted Fed. R. Civ. P. 4(m).  The Third Circuit read "the new rule to require a court to extend the time if good cause is shown and to allow a court discretion to dismiss or extend time absent a showing of good cause." *Id*. at *1305.  The Third Circuit instructed:

> "We hold that as a result of the rule change which led to Rule 4(m), when entertaining a motion to extend time for service, the district court must proceed in the following manner.  First, the district court should determine whether good cause exists for an extension of time.  ***If good cause is present, the district court must extend the time for service and the inquiry is ended.***  If, however, good cause does not exist, the court may in its discretion decide whether to dismiss the case without prejudice or extend the time for service."

*Id*. (***emphasis*** added).  The Third Circuit noted that the "relief may be justified, for example, if the applicable statute of limitations would bar the refiled action …." *Id*.  The Third Circuit further noted:

> "[A] district court may not consider the fact that the statute of limitations has run until after it has conducted an examination of good cause.  If the district court determines that good cause does not exist, only then may it consider whether the running of the statute of limitations does not require the district court to extend time for service of process. Rather, absent a finding of good cause, a district court may in its discretion still dismiss the case, even after considering that the statute of limitations has run and the refiling of an action is barred."

*Id*. at *1306.

31.     Judge Walrath addressed the requirements for obtaining an extension of service deadlines in *Sun Healthcare*.  There, the defendants, almost two years after the adversary proceedings were commenced, sought to vacate default judgments and dismiss the underlying complaints for deficiencies in service.  *Sun Healthcare*, at *2.  The Court found deficiencies in service.  The defendants also sought to dismiss the complaints because the 4(m) period had expired.

32.     In analyzing whether to dismiss the complaints because the 4(m) period had expired or exercise the Court's discretion and extend the 4(m) period, the Court applied *Petrucelli*, noting that it must:  "First ascertain whether plaintiff has 'good cause' to perfect service within 120 days … If the plaintiff demonstrates 'good cause,' then the court is duty-bound to extend the time for service.  However, where the plaintiff cannot show 'good cause,' the court still has discretion to grant the plaintiff additional time to serve the defendant properly or to dismiss the action without prejudice. "  *Sun Healthcare*, at *3.  Following *Petrucelli*, Judge Walrath equated "good cause" with "excusable neglect," which requires a demonstration of good faith on the party seeking an enlargement of time under Rule 4(m) and a reasonable basis for non-compliance with the time specified in the rule.  *Id*.

33.     Even though plaintiff in *Sun Healthcare* failed to demonstrate (or even address) excusable neglect, the court still exercised its discretion and granted plaintiff additional time to perfect service.  *Id*. at *4.  It did so mindful of *Petrucelli's* instruction to consider whether "the applicable statute of limitations would bar refiling of the plaintiff's actions."  *Id*.  The Court noted that "if the adversary proceedings are dismissed, the Debtors could not refile because the statute of limitations has expired… the Debtors are unable to cure defective service absent our

grant of additional time." *Id.* The court also considered whether the action was frivolous, which it determined it was not, and plaintiff's motivation in in prosecuting its claim. *Id.*

34.     Here, the Trustee has shown his good faith and good cause exists for the requested extension.  The Trustee routinely and freely granted extensions to the defendants to answer or otherwise respond to the Complaints without imposing conditions (i.e. acknowledging service of process) because they were acting *pro se*.  The statute of limitations has expired.  The Court should not put the value and validity of the Complaints at risk by denying an extension of the Service Deadline while the Trustee has acted and continues to act diligently to confirm proper service was made.  This would be unfair to unsecured creditors seeking a ratable distribution from the Trust.

35.     Because of the global challenge to the Summonses brought by the Cross and the MTD Defective Service, the Service Deadline in all Adversary Proceedings should be extended for a period of sixty (60) following the entry of a final order entered adjudicating those motions.

**WHEREFORE,** the Trustee respectfully requests that the Court reconsider the 4(m) Order and grant such other and further relief as is just and proper.

Respectfully Submitted,

Dated:  December 11, 2017
Wilmington, Delaware          **THE ROSNER LAW GROUP LLC**

*/s/ Frederick B. Rosner*
Frederick B. Rosner (DE 3995)
Scott J. Leonhardt (DE 4885)
Jason A. Gibson (DE 6091)
824 N. Market Street, Suite 810
Wilmington, Delaware 19801
Telephone: (302) 777-1111
Email: rosner@teamrosner.com

*-and-*

{00021880. }                    16

**BROWN RUDNICK LLP**
William R. Baldiga, Esq. (*pro hac vice*)
Sunni P. Beville, Esq. (*pro hac vice*)
Sharon I. Dwoskin, Esq. (*pro hac vice*)
One Financial Center
Boston, MA 02111
Tel: (617) 856-8200
wbaldiga@brownrudnick.com
sbeville@brownrudnick.com
sdwoskin@brownrudnick.com

*Counsel for the F2 Liquidating Trust*

{00021880. }                    17

# Exhibit "1"

{00021264. }

| Defendant Name | Adversary Number |
|---|---|
| Alaric Compliance Services LLC | 17-50663 |
| Amazon Web Services, Inc. | 17-50664 |
| Aperio Management, LLC | 17-50665 |
| AssetMark, Inc. | 17-50666 |
| Burnaev Evgeny | 17-50667 |
| Caggiano Consulting, Inc. | 17-50668 |
| Cantella & Co., Inc. | 17-50669 |
| CCA Financial, LLC | 17-50670 |
| Charles River Development, Inc. | 17-50671 |
| Comcast Corporation dba Comcast Trunk | 17-50672 |
| Denterlein Worldwide, Inc. | 17-50673 |
| Fascet LLC | 17-50674 |
| Fiserv, Inc. | 17-50675 |
| Jackrabbit Design Inc. | 17-50677 |
| Jim McManus dba Complex Stories | 17-50678 |
| Keystone Partners, LLC | 17-50679 |
| Locke Lord LLP | 17-50680 |
| Morningstar, Inc. | 17-50681 |
| NASDAQ, Inc. fdba NASDAQ OMX Group, Inc. | 17-50682 |
| Nubis Novem | 17-50683 |
| Presidio Networked Solutions LLC | 17-50684 |
| Salesforce.com, Inc. | 17-50685 |
| Shawmut Advertising, Inc. | 17-50686 |
| Standard & Poor's Financial Services LLC | 17-50687 |
| Stradley, Ronon, Stevens & Young, LLP | 17-50688 |
| Teneo Strategy LLC | 17-50689 |
| Wells Fargo Clearing Services, LLC dba Wells Fargo Advisors | 17-50690 |
| Howard B. Present, et al | 17-50691 |
| Laura Dagan, et al | 17-50692 |
| Adam Altus | 17-50693 |
| Alexander J Nary | 17-50694 |
| Brian Fairhurst | 17-50695 |
| Carey Hoch | 17-50696 |
| David Hanlon | 17-50697 |
| Elena Zarubina | 17-50698 |
| Flynn McDonnell | 17-50699 |
| James Celico | 17-50700 |
| Karl Desmond | 17-50701 |
| Kevin Orr | 17-50702 |
| Kyle Parker | 17-50703 |
| Michael Albert | 17-50704 |

| Nathan Williams | 17-50705 |
| Philip R. Murray | 17-50707 |
| Robert Lynch | 17-50708 |
| Robert McDermott | 17-50709 |
| Rooker Price | 17-50710 |
| Sharon French | 17-50711 |
| Steven Deroian | 17-50712 |
| William Thompson | 17-50713 |
| Richard Tomney | 17-50714 |
| Richard B. Weed | 17-50715 |
| Adrienne Souza | 17-50716 |
| Affinity Investments II, LLC | 17-50717 |
| Agnes Carol McClelland | 17-50718 |
| Ann Aghababian | 17-50719 |
| Anna Panchekha | 17-50720 |
| Barry Dagan | 17-50721 |
| Charles Hart | 17-50722 |
| Christine Martin | 17-50723 |
| Cynthia Liu | 17-50724 |
| David Souza | 17-50725 |
| Edward D'Alelio | 17-50726 |
| Adam Graves | 17-50727 |
| Adam O'Connor | 17-50728 |
| Alexandra Swirbalus | 17-50729 |
| Alexey Panchekha | 17-50730 |
| Andrew Tewksbury | 17-50731 |
| Barry Hines | 17-50733 |
| Betsy Amenta | 17-50734 |
| Brendan McCarthy | 17-50735 |
| Brett Olsen | 17-50736 |
| Brian Doherty | 17-50737 |
| Brian Flanagan | 17-50738 |
| Brian McCracken | 17-50739 |
| Cailey Colantuno | 17-50740 |
| Carlos Oliveira | 17-50741 |
| Caroline Willis | 17-50742 |
| Christopher E. Crosby | 17-50743 |
| Conor Anderson | 17-50744 |
| Daniel Chambers | 17-50746 |
| Daniel O'Brien | 17-50747 |
| Darren Mooney | 17-50748 |
| David Alan Dunaway | 17-50749 |
| Elizabeth Boen | 17-50750 |
| Dawn Darnell | 17-50751 |

| | |
|---|---|
| F. Warren McFarlan | 17-50752 |
| Deborah Deskavich | 17-50753 |
| Dennis Follmer | 17-50754 |
| Geordie McClelland | 17-50755 |
| Eileen Leary | 17-50756 |
| Emily Meyer | 17-50757 |
| George McClelland | 17-50758 |
| Eric Frasier | 17-50759 |
| Eugene Pinsky | 17-50760 |
| James Burke Bradford | 17-50762 |
| Jason Lang | 17-50763 |
| Jeffrey Adams | 17-50764 |
| Geraldine Ricci | 17-50765 |
| Jeffrey Megar | 17-50766 |
| Graham Hart | 17-50767 |
| John H Allwein III | 17-50768 |
| John Harrington | 17-50769 |
| Haley Present | 17-50770 |
| John Greg Whitaker | 17-50771 |
| Hazel McClelland | 17-50772 |
| HB Present Holdings, LLC | 17-50773 |
| Jonathan Eng | 17-50774 |
| Hilary Present | 17-50775 |
| Joseph Miskel | 17-50776 |
| Holden Present | 17-50777 |
| Kara Brown | 17-50778 |
| Hunter Present | 17-50779 |
| Karen Walsh | 17-50780 |
| Kate Kinlin | 17-50781 |
| Ilya Muchnik | 17-50782 |
| Kathleen Weckler | 17-50783 |
| Jack Chafin | 17-50784 |
| Kevin Ramsier | 17-50785 |
| Jacquelyn McClelland | 17-50786 |
| Kimberly Collins | 17-50787 |
| Kyle Wiggs | 17-50788 |
| Jennifer L. Kingsbury Trust | 17-50789 |
| Langton Garvin | 17-50790 |
| John Chu | 17-50791 |
| Laura Dagan | 17-50792 |
| Leonard Gurevich | 17-50793 |
| John Nelson | 17-50794 |
| Lisa deMont | 17-50795 |
| Lisa Quinn | 17-50796 |
| John M. Weyand 2005 Trust | 17-50797 |

{00021264. }

| | |
|---|---|
| Luiza Miranyan | 17-50798 |
| Jon F. Holsteen Declaration of Trust | 17-50799 |
| Mark Ramunno | 17-50801 |
| Jonathan Stern | 17-50802 |
| Martine Costello | 17-50804 |
| Joseph T. Palaoro III | 17-50805 |
| Matthew Hurd | 17-50806 |
| Matthew Landon | 17-50807 |
| Maxwell Saunders | 17-50808 |
| Melanie Karlberg | 17-50809 |
| Michael Fardy | 17-50810 |
| Nathan Eigerman | 17-50812 |
| Nicole Beauregard | 17-50813 |
| Nicole Miller | 17-50814 |
| Patrick Coyle | 17-50815 |
| Paul Gamble | 17-50816 |
| Paul Koeniger | 17-50817 |
| Richard Block | 17-50818 |
| Rodrigo Franco Toso | 17-50819 |
| Ruzanna Queenan | 17-50820 |
| Ryan Wellman | 17-50821 |
| Sabya Sinha | 17-50822 |
| Samuel Borland | 17-50823 |
| Scott Kearney | 17-50825 |
| Sean Tierney | 17-50826 |
| Shruti Manglik | 17-50827 |
| Stephan Buckley | 17-50828 |
| Stephen Fiedler | 17-50829 |
| Stephen S. Degnan | 17-50830 |
| Steven Perlmutter | 17-50831 |
| Thomas W. Hagstrom | 17-50832 |
| Timothy J Masullo | 17-50833 |
| Todd Larson | 17-50834 |
| Tyson Pettitt | 17-50835 |
| Walter Hartford | 17-50836 |
| William Creedon | 17-50837 |
| William McNamara | 17-50838 |
| William Monahan | 17-50839 |
| Zachary Zeltsan | 17-50840 |
| Zhenyu Yuan | 17-50841 |
| Michael Comiskey | 17-50842 |
| Valerie Villegas-Hoag | 17-50843 |
| Sonia Spirling | 17-50844 |
| Svitlana Senenko | 17-50845 |

{00021264. }

| | |
|---|---|
| Karen Palaoro | 17-50846 |
| Katie Black | 17-50847 |
| Keith Jarrett | 17-50848 |
| Lindsay Hart | 17-50849 |
| Lindsay McClelland | 17-50850 |
| MannMaxx Management (formerly EHMBHTFM LLC) | 17-50851 |
| Maureen Black | 17-50852 |
| Meribeth Harrington | 17-50853 |
| McClelland Irrevocable Grantor Trust | 17-50854 |
| Millennium Trust Company, LLC | 17-50855 |
| MMF-NH LLC | 17-50856 |
| Nathan Black | 17-50857 |
| Paul Martin | 17-50858 |
| Quinn McClelland Hart | 17-50859 |
| Regina Palaoro | 17-50860 |
| Revocable Trust Agreement of Charles E Jacobs dated 1/28/00 | 17-50861 |
| Robert Gottlieb | 17-50862 |
| Roberts Family 1998 Exempt Trust | 17-50863 |
| Ron Santangelo | 17-50864 |
| Sea View Investments LLC | 17-50865 |
| Thomas Roberts | 17-50866 |
| Shannon Price | 17-50867 |
| Stephen Roberto | 17-50868 |
| Stephen Ricci | 17-50869 |
| Thomas Littauer | 17-50870 |
| Thomas Mann | 17-50872 |
| Tina Eng | 17-50873 |
| TRN Capital LLC | 17-50874 |
| William D. Strecker | 17-50876 |
| William Weyand | 17-50877 |
| William J. Weyand Trust | 17-50878 |

{00021264. }