# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| F-Squared Investment Management, LLC, *et al.*, | Case No. 15-11469 (LSS) |
| Debtors. | |
| | |
| Craig Jalbert, in his Capacity as Trustee for F2 Liquidating Trust, | |
| vs. | |
| Brian Flanagan | Adv. No. 17-50738 |
| Matthew Landon | Adv. No. 17-50807 |
| Patrick Coyle | Adv. No. 17-50815 |
| Scott Kearney. | Adv. No. 17-50825 |

## OPINION

The trustee of the F2 Liquidating Trust (the "Trustee" or "Plaintiff") commenced over one hundred adversary proceedings post-confirmation seeking to avoid as fraudulent conveyances and/or preferential transfers discretionary bonus payments and/or tax distributions made prepetition by F-Squared Management, LLC. In this subset of those proceedings, which with two small exceptions involve only bonus payments, Defendants moved to dismiss the fraudulent conveyance counts on a single ground—that the Trustee failed to sufficiently plead lack of reasonably equivalent value because the sole allegations in the complaint regarding value are that the bonuses were entirely discretionary and that "[n]either the Employee Handbook nor Defendant[s'] employment agreement[s] lists any criteria or targets which, if met, would entitle Defendant[s] to receive a bonus." The Trustee does not dispute this characterization of his complaints; rather, he takes the position

that, as a matter of law, the payment of a discretionary bonus not tied to a previously-enunciated metric is a per se fraudulent conveyance if made while a debtor is insolvent. Simply put, the Trustee argues that such a bonus can never be for reasonably equivalent value because it confers no value whatsoever. Because I disagree with this premise, the motions to dismiss the fraudulent conveyance counts are granted.

With respect to the preference counts against Defendants Flanagan, Landon and Kearney, the Trustee's complaints hinge on Defendants being insiders as none of the transfers occurred within ninety days of the filing of the bankruptcy petitions. Each complaint alleges that the relevant Defendant was an insider based on his title of "Senior Vice President" and was part of the senior management team. While each Defendant disputes this characterization, and I have my doubts, such factual issues cannot be determined on a motion to dismiss. The Trustee's allegations are sufficient for pleading purposes, and as such, the motions to dismiss will be denied as to the preference counts.

*Background[1]*

F-Squared Management, LLC and its subsidiaries[2] (collectively, "Debtors") were investment management and research firms whose primary business was selling Debtors' portfolio model services to investment advisors in the advisory, institutional, retail and retirement markets. In order to provide products and services, Debtors created and licensed

---

[1] As required on a motion to dismiss, the facts recited herein are taken from the complaints. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). A court is not required to make findings of fact or conclusions of law on a motion to dismiss under Fed. R. Civ. P. 12, made applicable by Fed. R. Bankr. P. 7012, and I make none. *See* Fed. R. Civ. P. 52(a)(3), made applicable by Fed. R. Bankr. P. 7052.

[2] The debtors in these cases are: F-Squared Investment Management, LLC, F-Squared Investments, Inc., F-Squared Retirement Solutions, LLC, F-Squared Alternative Investments, LLC, F-Squared Solutions, LLC, F-Squared Institutional Advisors, LLC, F-Squared Capital, LLC, AlphaSector LLS GP 1, LLC, and Active Index Solutions, LLC.

a series of specialty indexes (the "AlphaSector Indexes"), covering a range of asset classes. The AlphaSector Indexes were based on sector rotation strategies that used quantitative models, programmed to measure the volatility and price movements of exchange-traded funds as criteria for inclusion and weighting in the indexes. As of June 30, 2014, there were approximately $28.5 billion in assets under advisement invested by Debtors' clients pursuant to the AlphaSector Indexes, including $13 billion in mutual fund assets sub-advised by Debtors.

In 2013, the Securities & Exchange Commission (the "SEC") began an investigation into potential violations of federal securities laws related to Debtors' advertising of the AlphaSector Indexes' performance track record between April 2001 and September 2008. On December 22, 2014, Debtors agreed to a settlement of an administrative cease-and-desist proceeding with the SEC that required Debtors to admit to false advertising during the relevant time period, pay a $5 million penalty to the SEC and disgorge $30 million in related profits. The Trustee contends that, as a result of Debtors' admitted securities law violations, Debtors were insolvent "since their inception."

Between December 2014 and March 2015, F-Squared Investments Inc. paid each Defendant a bonus (each, a "Bonus Payment"). Debtors contemplated giving bonuses to their employees as provided for in their employee handbook, which provides that:

> **Bonus**
> The Company has a discretionary annual cash bonus for all employees in good standing. This discretionary bonus, when given, is generally paid following the year end. Cash bonuses are payable in accordance with the Company's payroll practices in effect at the time, and the Company will deduct from any bonus all amounts required to be deducted or withheld under applicable laws or under any employee benefit plan in which you may participate.

3

> The Company reserves a binding right to remit payment of
> bonuses to certain individuals in installments ("rolling bonus"),
> or at other such times as the company [sic] deems prudent, in its
> sole discretion.    The rolling bonus is generally paid in two
> installments, with 75% of the eligible target bonus on or around
> February 15[th] and the remaining 25% on or around May 15[th].[3]

The opportunity for a bonus was also contemplated in Defendants' respective Offer Letters.[4]

Minutes of Debtors' April 6, 2015 meeting of the Board of Managers reflect that it was

unlikely that bonuses for 2015 would be paid due to Debtors' poor performance.

*Procedural Background*

On July 8, 2015, Debtors filed voluntary petitions under chapter 11 of title 11 of the

United States Bankruptcy Code.[5]    Plaintiff Craig Jalbert was appointed the trustee for the F2

---

[3] Compls. to Avoid & Recover Transfers Ex. B (F-Squared Investments Employee Handbook,), at 10, No. 17-50738, Dkt. No 1; No. 17-50807, Dkt. No. 1; No. 17-50815, Dkt. No. 1; No. 17-50825, Dkt. No. 1. I may consider the Employee Handbook as it was referred to in and attached to the operative complaint and relied upon.    *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.").

[4] Opening Br. in Supp. of Mot. of Brian Flanagan, Matthew Landon & Scott Kearny Pursuant to Fed. Rule of Civil Procedure 12(b)(6) to Dismiss First Am. Compls. for Failure to State a Claim Exs. A-D, Nov. 2, 2017, No. 17-50738, Dkt. No 16; No. 17-50807, Dkt. No. 16; No. 17-50825, Dkt. No. 16. I may consider Defendants' employment agreements as they were referred to in the Complaints and relied upon. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)("[A] document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." ) (internal quotation marks omitted). Defendants' employment agreements are referenced in the Complaints at paragraph 27. No. 17-50738, Dkt. No 1; No. 17-50807, Dkt. No. 1; No. 17-50815, Dkt. No. 1; No. 17-50825, Dkt. No. 1. At argument, the Trustee consented to the consideration of the Offer Letters as part of the employment agreements:

> THE COURT: The employment agreement was incorporated.  You referred to it.  You
> relied on it in your pleading, don't you?
> MS. DWOSKIN: I believe we rely on the employee handbook, Your Honor.
> THE COURT: Let's look at the complaint.  I want to make sure I understand.
> *    *    *
> MS. DWOSKIN: …Oh, you know what, you're right, neither the employee handbook
> nor the defendants [sic] employment agreement lists any criteria or targets.  Fair
> enough.
> So, let's talk about the employment agreement and let's assume that the agreements
> that were attached to Mr. Keenan's briefs are, in fact, the employee agreements.

Hr'g Tr. 158:13-15, Mar. 12, 2019.

[5] Ch. 11 Voluntary Pet., July, 8, 2015, No. 15-11469, Dkt. No. 1.

Liquidating Trust effective January 22, 2016 pursuant to Debtors' Joint Plan of Liquidation.[6]

On July 7, 2017, the Trustee filed complaints against each Defendant seeking the recovery of the Bonus Payments as fraudulent transfers.[7] On September 7, 2017, Defendants jointly filed their Motion to Dismiss[8] together with their opening brief.[9]

Subsequently, on October 19, 2017, the Trustee filed amended complaints (each a "First Amended Complaint") against Defendants Flanagan, Landon and Kearny (and, together with the complaint filed against Defendant Coyle, the "Complaints"). The First Amended Complaint against Defendants Flanagan and Landon included an additional, alternative claim that the Bonus Payments constituted preferential transfers.[10] The First Amended Complaint against Defendant Kearny removed the claim of fraudulent transfer and added a claim of preferential transfer.[11] On November 2, 2017, Defendants Flanagan, Landon and Kearny jointly filed their motion to dismiss the First Amended Complaints[12]

---

[6] Order Confirming Joint Plan of Liquidation Under Ch. 11 of the Bankruptcy Code Proposed by Debtors and Official Comm. of Unsecured Creditors, Jan. 14, 2016, No. 15-11469, Dkt. No. 486.

[7] Compl. to Avoid and Recover Transfers and Disallow Def.'s Claim, July, 7, 2017, No. 17-50738, Dkt. No 1; Compls. to Avoid and Recover Transfers, July 7, 2017, No. 17-50807, Dkt. No. 1; No. 17-50815, Dkt. No. 1; No. 17-50825, Dkt. No. 1.

[8] Mot. of Brian Flanagan, Matthew Landon, Patrick Coyle & Scott Kearny to Dismiss Compls. for Failure to State a Claim Pursuant to Fed. Rule of Civil Procedure 12(b)(6), September 28, 2017, No. 17-50738, Dkt. No 6; No. 17-50807, Dkt. No. 6; No. 17-50815, Dkt. No. 6; No. 17-50825, Dkt. No. 6.

[9] Opening Br. in Supp. of Mot. of Brian Flanagan, Matthew Landon & Scott Kearny Pursuant to Fed. Rule of Civil Procedure 12(b)(6) to Dismiss First Am. Compls. for Failure to State a Claim, Nov. 2, 2017, No. 17-50738, Dkt. No 16; No. 17-50807, Dkt. No. 16; No. 17-50825, Dkt. No. 16.

[10] First Am. Compl. to Avoid & Recover Transfers & Disallow Def.'s Claim, Oct. 19, 2017, No. 17-50738, Dkt. No 14; First Am. Compl. to Avoid & Recover Transfers, Oct. 19, 2017, No. 17-50807, Dkt. No. 14.

[11] First Am. Compl. to Avoid & Recover Transfers, Oct. 19, 2017, No. 17-50825, Dkt. No. 14.

[12] Mot. of Brian Flanagan, Matthew Landon & Scott Kearny Pursuant to Fed. Rule of Civil Procedure 12(b)(6) to Dismiss First Am. Compls. for Failure to State a Claim, Nov. 2, 2017, No. 17-50738, Dkt. No 16; No. 17-50807, Dkt. No. 16; No. 17-50825, Dkt. No. 16.

together with their opening brief in support,[13] which incorporated the opening brief on their original motion to dismiss and made further argument seeking to dismiss the new counts.

The Trustee filed an answering brief on November 16, 2017.[14] Defendants' reply brief was filed on November 22, 2017.[15] And, on November 28, 2017 the Trustee filed a motion for leave to file a sur-reply accompanied by his sur-reply brief.[16]

I heard oral argument on March 12, 2019 and took the matter under advisement.[17]

*Jurisdiction*

Subject matter jurisdiction exists over this adversary proceeding pursuant to 28 U.S.C. § 1334(b). Further, adversary proceedings seeking to recover fraudulent conveyances and preferences are statutorily core matters.[18] And, in each of these adversary proceedings, both Plaintiff and each Defendant have expressly consented to my entry of final orders.[19] Accordingly, I may enter any final judgments in these adversary proceedings consistent with the United States Constitution.

---

[13] Opening Br. in Supp. of Mot. of Brian Flanagan, Matthew Landon & Scott Kearny Pursuant to Fed. Rule of Civil Procedure 12(b)(6) to Dismiss First Am. Compls. for Failure to State a Claim, Nov. 2, 2017, No. 17-50738, Dkt. No 17; No. 17-50807, Dkt. No. 17; No. 17-50825, Dkt. No. 17.

[14] Trustee's Mem. in Opp'n to Defs.' Mots. to Dismiss, Nov. 16, 2017, No. 17-50738, Dkt. No 21; No. 17-50807, Dkt. No. 21; No. 17-50815, Dkt. No. 18; No. 17-50825, Dkt. No. 21.

[15] Reply Br. in Supp. of Mots. of Brian Flanagan, Matthew Landon, Patrick Coyle & Scott Kearney to Dismiss Compls. and First Am. Compls for Failure to State a Claim Pursuant to Fed. Rule of Civil Procedure 12(b)(6), Nov. 22, 2017, No. 17-50738, Dkt. No 23; No. 17-50807, Dkt. No. 23; No. 17-50815, Dkt. No. 20; No. 17-50825, Dkt. No. 23.

[16] Mot. of Pl. Craig Jalbert, Trustee of the F2 Liquidation Trust, for Leave to File Sur-Reply to Reply Br. in Supp. of Mots. of Brian Flanagan, Matthew Landon, Patrick Coyle & Scott Kearney to Dismiss Compl. and First Am. Compls. for Failure to State a Claim Pursuant to Fed. Rule of Civil Procedure 12(b)(6), Nov. 28, 2017, No. 17-50738, Dkt. No 24; No. 17-50807, Dkt. No. 24; No. 17-50815, Dkt. No. 21; No. 17-50825, Dkt. No. 24.

[17] *See* Hr'g. Tr., Mar. 12, 2019, No. 15-11469, Dkt. No. 1262.

[18] 28 U.S.C. § 157(b)(2)(F), (H).

[19] Compls., at ¶4, No. 17-50738, Dkt. No 1; No. 17-50807, Dkt. No. 1; No. 17-50815, Dkt. No. 1; No. 17-50825, Dkt. No. 1; Mots. to Dismiss, at 2, No. 17-50738, Dkt. No 6; No. 17-50807, Dkt. No. 6; No. 17-50815, Dkt. No. 6; No. 17-50825, Dkt. No. 6; First Am. Compls., at 3, No. 17-50738, Dkt. No 14; No. 17-50807, Dkt. No. 14; No. 17-50825, Dkt. No. 14; Mots. to Dismiss the Am. Compls., at 3, No. 17-50738, Dkt. No 16; No. 17-50807, Dkt. No. 16; No. 17-50825, Dkt. No. 16.

*The Parties' Positions*

Defendants moved to dismiss the Complaints for failure to sufficiently allege both reasonably equivalent value as to the fraudulent conveyance counts and insider status as to the preference count.

As for the fraudulent conveyance counts, Defendants assert that Plaintiff has not sufficiently pled reasonably equivalent value because the Complaints are devoid of any allegations with respect to the value Debtors received in exchange for the transfers. Defendants assert that the allegations in the Complaints are simply a formulaic recitation of the statute and that the sole allegations are not sufficient to permit the court to draw a reasonable inference that the Bonus Payments did not confer any value on Debtors. Defendants contend that the natural inference in awarding a discretionary bonus, and the only rational use of that discretion, is to pay a bonus only if it brings value to the employer.[20] Finally, Defendants argue that the Trustee makes no allegations that Defendants did not honestly, competently and diligently perform their jobs.

As for the preference count, Defendants assert that simply setting forth each Defendants' title is not sufficient to infer that they are an officer for purposes of the longer preference period in § 547. They contend that their Offer Letters show that they had no managerial responsibilities and that this is confirmed by Debtors' filed Statements of Financial Affairs which do not list them as officers and directors.

Plaintiff asserts that the allegations in the Complaints provide Defendants with fair notice of his claims and are not simply a formulaic recitation of the statutory elements of

---

[20] However, Defendants do not concede that the bonuses were discretionary and point to, among other things, the terms of the Offer Letters. Opening Br. Ex. A-D.

7

§ 548. He claims that "courts have consistently found that where a bonus is entirely discretionary, the debtor has no obligation to pay it, and the bonus is thus gratuitous."[21] He further takes the legal position that an employer receives no value for a discretionary bonus because the employer has no obligation to pay it. Finally, the Trustee contends that whether Defendants honestly, competently and diligently performed their jobs is "irrelevant" because, ultimately, Debtors could choose to make the Bonus Payments or not.[22]

As for the preference counts, the Trustee argues contends that his allegations that Defendants Flanagan, Landon, and Kearney were Senior Vice Presidents with managerial responsibilities are sufficient to raise a reasonable inference that they were officers.

*Legal Standard*

The customary recitation of the legal standard on a Rule 12(b)(6) motion goes something like this. A Rule 12 (b)(6) motion is a challenge to the sufficiency of factual allegations in a complaint.[23] In reviewing a complaint under Rule 12(b)(6), the court should first separate the factual and legal elements of a claim.[24] The court must accept all of the complaint's well-pled facts as true but may disregard legal conclusions.[25] A court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."[26] A plausible claim requires more than allegations of the plaintiff's entitlement to relief; a complaint has to "show" such an entitlement with its

---

[21] Mem. in Opp'n., at 9.
[22] Mem. in Opp'n., at 10.
[23] *In re Amcad Holdings, LLC*, 579 B.R. 33, 37 (Bankr. D. Del. 2017) (citing to *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993)).
[24] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).
[25] *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).
[26] *See In re THQ, Inc.*, No. 12–13398, 2016 WL 1599798, at *2 (Bankr. D. Del. Apr. 18, 2016).

facts.[27] It is insufficient to provide "threadbare recitals of a cause of action's elements, supported by mere conclusory statements[.]"[28] Instead, a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory."[29] The court must draw all inferences from the facts in the light most favorable to the plaintiff.[30] In gauging the sufficiency of a complaint, a court "draw[s] on its judicial experience and common sense."[31] The moving party has the burden of demonstrating that dismissal is appropriate.[32]

While this standard suffices with respect to the request to dismiss the preference counts, given the Trustee's "per se" argument—that discretionary bonuses without pre-enunciated metrics are never for "value"—dismissal is appropriate if this legal position is incorrect.[33] This is so because a denial of a motion to dismiss is a determination that "*the plaintiff is entitled to offer evidence to support his or her claims.*"[34] Where the plaintiff does not intend to offer further evidence in support of his claim, discovery is unnecessary and the issue for determination on the motion to dismiss is not whether the facts and reasonable inferences permit the plaintiff to continue and discover evidence in support of his claims, but whether the facts and reasonable inferences in the complaint determine conclusively that the

---

[27] *Fowler*, 578 F.3d at 210 (citing *Iqbal*, 556 U.S. at 677 (2009)).

[28] *THQ Inc.*, 2016 WL 1599798, at *2 (citing *Iqbal*, 556 U.S. at 677).

[29] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007).

[30] *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

[31] *Burtch v. Huston (In re USDigital, Inc.)*, 443 B.R. 22, 35 (Bankr.D.Del.2011) (citation omitted).

[32] *In re United Tax Grp., LLC*, No. 14-10486 (LSS), 2016 WL 7235622, at *2 (Bankr. D. Del. Dec. 13, 2016).

[33] *See, e.g., In re Churchill Mortg. Inv. Corp.*, 256 B.R. 664 (Bankr. S.D.N.Y. 2000), aff'd sub nom. *Balaber-Strauss v. Lawrence*, 264 B.R. 303 (S.D.N.Y. 2001).

[34] *Borough of Moosic v. Darwin Nat. Assur. Co.*, 556 F. App'x 92, 95–96 (3d Cir. 2014) (emphasis added) (internal quotation marks omitted) (citing to *Grier*, 591 F.3d at 676). *See also Fowler*, 578 F.3d at 213 (internal quotation marks omitted) (A plaintiff is not required to establish each element of a prima facie case in his complaint, but "need only put forth allegations that raise a reasonable expectation *that discovery will reveal evidence* of the necessary element.") (emphasis added).

plaintiff is entitled to entry of judgment against the defendants. If not, the motion to dismiss should be granted.[35] In assessing the sufficiency of a complaint, therefore, it is appropriate to explore with counsel "what factual claims the plaintiff is and is not intending to make in order to determine what is, and is not, intended to be put in issue by the challenged complaint."[36]

Here, the Complaints contain three paragraphs with respect to the Bonus Payments:

> 26. In the year prior to the Petition Date, the Debtors paid Defendant the Bonus Payments identified on Exhibit A. Certain Bonus Payments were made less than a month after laying off 30% of its work force and less than a week after the Debtors began their cost-cutting and restructuring efforts, and all of the Bonus Payments were made after November 2015, when it became clear that F-Squared was going to be subject to the Transfer Order.
> 27. Pursuant to the F-Squared Employee Handbook, a copy of which is attached hereto as Exhibit B, bonuses were paid to employees on an entirely discretionary basis. Neither the Employee Handbook nor Defendant's employment agreement lists any criteria or targets which, if met, would entitle Defendant to receive a bonus.
> 28. Minutes of F-Squared's April 6, 2015 meeting of the Board of Managers note that no bonuses for 2015 were likely to be paid due to F-Squared's poor financial performance. Nonetheless, F-Squared made the Bonus Payments, even though it was in the midst of its death spiral.

As Defendants point out, there are no allegations in the Complaints that the Bonus Payments were excessive or not market-based or that Defendants did not honestly and diligently perform their jobs.[37] Nor are there allegations that Defendants were involved in

---

[35] *See Churchill Mortg.*, 256 B.R. at 675 (court granting motion to dismiss in an action seeking recovery of broker commissions paid by a debtor running a Ponzi scheme, when court answered "no" to the following question: "[M]ay the [b]rokers' services , as a matter of law, be deemed of no value to the [d]ebtors because the [d]ebtors' operation as a Ponzi scheme was facilitated or prolonged by the funds received by the [d]ebtors through those services?").
[36] *Id.* at 673.
[37] Opening Br. ¶¶ 19-20.

determining or awarding the Bonus Payments. Indeed, there are no allegations whatsoever

regarding Debtors' deliberations regarding the awarding and payment of the Bonus

Payments or what factors Debtors did or did not consider in awarding them. As

importantly, at argument, the Trustee's counsel candidly stated that the Trustee does not

intend to introduce evidence on any of these topics should this matter go to trial.[38] The

Trustee's theory is that the Bonus Payments, as a matter of law, conferred no value on

Debtors because they were discretionary in nature and there were no pre-enunciated metrics

---

[38] *See* Hr'g Tr. 164:17-165:17
    (THE COURT:  I am looking at the facts that you plead.  I think you want me to draw
    the inference, and if I did this what trial would we be having?  Okay.  Here is the
    question I have; if we did this what trial would we have?  What discovery would we
    do because you would continue to argue that it could not, these bonuses could not
    possibly be for value because ahead of time there has been no articulated standard.
    Isn't that your argument?
    MS. DWOSKIN:  It is; although, again, I would just make one additional gloss to that
    and that is it seems, based on defendants' presentation here, that they disagree with
    the fact that it was discretionary.  They believed that there was some obligation to pay.
    THE COURT:  Let's put that aside because that is what they're saying.
    MS. DWOSKIN:  You're correct.
    THE COURT:  So, then what trial would I have.  I would have no trial.
    MS. DWOSKIN:  Correct.
    THE COURT:  So, then what trial would I have?  I would have no trial.
    MS. DWOSKIN:  Correct.
    THE COURT:  So, shouldn't I just decide this now as a matter of law?
    MS. DWOSKIN:  You could if you agree with us that the bonuses are discretionary.);
Hr'g Tr. 167:21-168:2
    (THE COURT:  That's why I asked what is your allegation.  Your allegation is not --
    you're not saying that if they -- if they came forward and said, and they have testimony
    that says here's how it was assessed at the time and when we awarded it.  You would
    still argue that doesn't matter, right?
    MS. DWOSKIN:  I would, Your Honor[] . . .);
Hr'g Tr. 180:21-181:6
    (THE COURT:  ...Go ahead and make your other points.  I just want to make sure I
    understand this because I think it's coming clear to me what I thought as I started
    reviewing this which is that this is a per se argument and I'd have to buy the argument
    -- to deny the motions to dismiss I have to accept the argument that a discretionary
    bonus with no metrics can never be given for value.
    MS. DWOSKIN:  That's correct.  I can't say anything else about that, Your Honor,
    that that's just correct.
    THE COURT:  Good.  I want to be clear.).

put in place prior to the work performed for the year in which the bonus was granted.[39]  In

these circumstances, the Motions to Dismiss should be granted if the Trustee's legal theory

is flawed.[40]

*Discussion*

I.    **Discretionary Bonuses Are Not Per Se of No Value for Purposes of § 548.**

Section 548 of the Bankruptcy Code permits the trustee to avoid the transfer of an

interest of the debtor in property (here, the Bonus Payments) made within two years of the

bankruptcy filing if the debtor received less than "a reasonably equivalent value" in

exchange for the transfer and the debtor was insolvent.[41]  The term "reasonably equivalent

value" is not defined in the Bankruptcy Code.  And, while the term "value" is defined,

("value means property, or satisfaction or securing of a present or antecedent debt of the

debtor, but does not include an unperformed promise to furnish support the debtor or to a

relative of the debtor"[42]), courts have not found this definition limiting.[43]

---

[39]  The Trustee's theory developed from its briefing (i.e., a discretionary bonus can never be for value) to state that a discretionary bonus without a pre-enunciated, performance-based metric cannot be for value.  *See* Hr'g Tr. 166:3-11.
> (THE COURT: I understand your argument to be that there is no way at all, ever, that a discretionary bonus can be for value because it is discretionary.
> MS. DWOSKIN: Unless it is tied to some value specifically in a plan.
> THE COURT: Unless it is tied to a specific incentivizing metric.
> MS. DWOSKIN: Correct. And that's what the cases say.)

*See also* Hr'g. Tr. 185:1-4 ("MS. DWOSKIN: Again, just to make sure that we're clear discretionary bonuses means no obligation to pay and not tied to any value.").

[40]  In the Motion to Dismiss, Defendants argue that, as evidenced by the Employee Handbook, Debtors had a bonus program in place and that their respective Offer Letters specified a target bonus for each of them.  They conclude that this, together with a course of conduct, created an enforceable obligation to award and pay (or, perhaps to in good faith consider awarding and paying) the Bonus Payments.  They may be correct, but this creates a factual issue.  Given my ruling, I need not address this argument.

[41]  While defendants in other adversary proceedings commenced by the Trustee challenged the sufficiency of the allegations regarding insolvency, Defendants here did not.  The sufficiency of the allegations regarding insolvency will be addressed in a separate opinion.

[42]  11 U.S.C. § 548(D)(2).

[43]  *See In re R.M.L., Inc.*, 92 F.3d 139, 148 (3d Cir. 1996).

In *R.M.L.*, the Third Circuit articulated a two-part inquiry for the determination of reasonably equivalent value.[44] The court must first make "an express factual determination as to whether the debtor received any value at all."[45] If value was conferred, then the court determines, under a totality of the circumstances standard, whether that value was reasonably equivalent to what the debtor gave up.[46]

To determine whether the threshold requirement of "any value" is satisfied, the court examines "whether [the debtor] received *any benefit* ... whether direct or indirect, without regard to the cost of [the] services, the contractual and arms-length nature of the relationship, and the good faith of the transferee."[47] The Third Circuit dispels any notion that a debtor must receive a direct tangible economic benefit to receive "value" for purposes of § 548 and recognizes cases decided by sister circuits concluding that gambling losses, charitable contributions, and money spent in a failed attempt to keep a business afloat can confer value.[48] The Third Circuit also makes clear that a finding of "value" is not a high

---

Because such intangibles are technically not within § 548(d)(2)(A)'s definition of "value," courts have struggled to develop a workable test for reasonably equivalent value. *See generally In re Young,* 82 F.3d 1407 (8th Cir.1996) (determining whether debtors obtained "value" in exchange for charitable contributions to church); *In re Chomakos,* 69 F.3d 769 (6th Cir.1995) (examining whether debtors obtained "value" in exchange for $7,710 in gambling losses), *cert. denied,* 517 U.S. 1168, 116 S.Ct. 1568, 134 L.Ed.2d 667 (1996); *In re Morris Communications NC, Inc.,* 914 F.2d at 458 (attempting to determine "value" of shares in corporation whose only asset was a license application pending before the FCC that had a one in twenty-two chance of approval); *In re Fairchild Aircraft Corp.,* 6 F.3d 1119, 1125-26 (5th Cir.1993) (deciding whether money debtor spent in failed attempt to keep commuter airline afloat conferred "value" on the debtor).

[44] *Id.* at 149.

[45] *Id.*

[46] *Id.* The *R.M.L.* court observed that the bankruptcy court had conflated these separate inquiries.

[47] *Id.* at 150 (emphasis added). *See also In re Fruehauf Trailer Corp.,* 444 F.3d 203, 212 (3d Cir. 2006) (citing to *R.M.L.,* 92 F.3d at 152) (looking at whether value was conferred by considering "whether, 'based on the circumstances that existed at the time' of the transfer, it was 'legitimate and reasonable' to expect some value accruing to the debtor."). The totality of the circumstances test is not relevant to this first prong of the evaluation. *Id.*

[48] *See supra* note 43.

bar; even a slight chance that a benefit (tangible or intangible) might be conferred upon a debtor is sufficient to show that *some* value has been conferred and permits the court to proceed to the next step of the analysis. [49]

As is the case here, the plaintiff in *R.M.L.* argued that "value" was not conferred, as a matter of law.[50]  There, the official committee of unsecured creditors sued Mellon Bank seeking to recover, as constructively fraudulent transfers, payments made under a commitment letter the bank issued in connection with a contemplated $53 million loan that ultimately did not close.  On appeal, the committee argued that "money spent on a losing investment fails to confer 'value' as a matter of law."[51]  The court rejected that per se proposition because at the time the transfer was made there was some chance the debtor would receive a future economic benefit.[52]  In particular, the Third Circuit examined the bankruptcy court's specific findings, including that the loan commitment "essentially offered only a very slim 'chance' of obtaining a substantial economic benefit" because the numerous conditions in the commitment letter were unlikely to be satisfied.[53]  The Third Circuit concluded that, with this finding, the bankruptcy court also implicitly found that there was

---

[49] *See R.M.L*, 92 F.3d at 153. ("Although the bankruptcy court did not announce an explicit finding on the question whether Mellon Bank's commitment letter conferred any value on Intershoe, it is clear that the court implicitly answered that question in the affirmative.  The bankruptcy court stated that 'all parties should have known there was *a substantial probability that the loan would not close* [.]' ... Put another way, the court concluded that by November 7, 1991, there was a slight chance that the loan *would* close."); *Id.* at 152 ("[S]o long as there is some chance that a contemplated investment will generate a positive return at the time of the disputed transfer, we will find that value has been conferred.")

[50] *Id.* at 151 ("The [c]ommittee disputes this legal conclusion, arguing that money spent on a losing investment fails to confer "value" as a matter of law.").

[51] *Id.*

[52] The court concluded that the best solution is to make a determination *based on the circumstances that existed at the time the investment was contemplated*, whether there was any chance that the investment would generate a positive return. *Id.* at 152.

[53] *Id.* at 153.

"a slight chance that the loan *would* close" based on the circumstances as they existed at the time the investment was contemplated.[54] Because this fact supported a finding of "value," the Third Circuit proceeded to determine whether the value conferred on the debtor (i.e., the slim chance of closing) was reasonably equivalent to the payments made to Mellon Bank.

Applying the teaching of *R.M.L.*, I cannot conclude as a matter of law that the payment of a bonus pursuant to an entirely discretionary bonus plan that does not contain any pre-enunciated performance or incentivizing metrics can never be for "value."[55] As stated by the Third Circuit and as evidenced by its analysis, whether "value" is received in a given transaction is inherently a factual question determined by reviewing the transaction at the time it occurred.[56]

Here, the Trustee does not plead in the Complaints, and does not intend to offer at trial, any facts regarding the circumstances surrounding the awarding and payment of the bonuses.[57] Instead, he argues that because Defendants had already received their salaries for the work performed in 2014, any discretionary bonus could only be gratuitous and thus conferred no "value" on Debtors.[58] But, as Defendants assert, in the employment context, the common meaning of "bonus" is that it is "not a gift or gratuity;" rather it is in exchange for services "or on consideration in addition to or in excess of the compensation that would ordinarily be given."[59] Indeed, normal experience and common sense suggest that the

---

[54] *Id.*
[55] *See* Hr'g. Tr. 166: 3-11.
[56] *R.M.L.*, 92 F.3d at 149. Because the inquiry is inherently factual, the application of a per se rule is likely inappropriate.
[57] *See* Hr'g. Tr. 154:17-155:1; 183:4-13.
[58] *See* Hr'g. Tr. 169:1-10.
[59] Reply Br. ¶9 (citing to Black's Law Dictionary 74 (2d ed. 2001)).

reasonable inference drawn from awarding and payment of a bonus, discretionary or not, is

that the employer paying the bonus believes it confers value on the employer.

The Trustee's analysis is fatally flawed in that it fails to take into consideration

whether Debtors received any benefit—direct or indirect, tangible or intangible. It is not

hard to posit facts that would show that the payment of the Bonus Payments conferred

"value" on Debtors for purposes of § 548. Indeed, at argument, counsel and I had the

following colloquy:

> THE COURT: Why can't I look at what the debtor evaluated
> when they in fact gave bonuses? You're assuming they didn't do
> any evaluation in your per se [argument]. Your per se
> [argument] says they can't articulate it at the time.
> MS. DWOSKIN: We're saying that when a bonus is not based
> on any obligation and isn't tied in its governing documents like
> all of these cases say, to specific metrics to look at --
> THE COURT: It cannot be [for] value[].
> MS. DWOSKIN: -- that it can't be for value.
> THE COURT: So that if I had a bonus plan that was
> discretionary, wholly discretionary, and at the end of the year I
> looked and said this is my best employee, they made the best
> sales, they made, they were in here working night and day, they
> were helping me train other employees. If I gave that employee
> a bonus after doing that evaluation, that that bonus would be
> recoverable as a fraudulent transaction because there was no
> value given.
> MS. DWOSKIN: If the company was insolvent. Yes.
> THE COURT: No. I think that's where you're confusing things.
> The look at value has nothing to do with solvency. Whether
> there's value, that's one thing. You're right, if I was solvent, no
> problem.
> MS. DWOSKIN: That was my only point. That, in other
> words, in order to avoid a transfer you need to both be insolvent
> and make a payment for less [than] reasonable value.
> THE COURT: The value, the determination of value is not
> dependent on whether the debtor is solvent or insolvent.
> Correct?
> MS. DWOSKIN: Correct. Correct. You just --
> THE COURT: That, you look at by itself.
> MS. DWOSKIN: Yes.

THE COURT:  So in that situation, let's say the debtor is insolvent, in that situation where I called, I called my management team in front of me, and I said let's sit down and evaluate our employees.  And I say, you know what here's my top employee, here's my top three employees.  I'm going to give them bonuses this year because they brought in sales of over $100 million, they helped me train my other employees, they were here working night and day, and I give them a reasonable bonus, $100,000, that that provides no value, that just provides no value under [R.M.L.]

MS. DWOSKIN:  That's right, Your Honor.[60]

\*       \*       \*

THE COURT:  I think you also are going to say, you know what, if it was to stay, if I decided, you know I need to give that guy $100,000 to stay, because he's my best employee, you say that provides no value.

MS. DWOSKIN:  And again, when courts determine retention bonuses, they look at all kinds of things.  The set of factors is not before us right now.[61]

---

[60] Hr'g. Tr. 209:21-211:13.  We continued:
> THE COURT:  Okay.  You're being consistent.  I love that.
> MS. DWOSKIN:  Yeah, I mean I can't tell you something that, you know, we can't say.
> THE COURT:  No, I love that, because some people don't go there, and I think you're, that's the logical extension of your argument and you're owning it and I love that and you should be and I give you total credit for that.  I just want to make sure I'm understanding it.  And, you know, that's where you had to go with it.

Hr'g. Tr. 211:14-23.

[61] Hr'g. Tr. 209:21-212:5.  Trustee's counsel seems to be making a distinction between the Bonus Payments and a retention bonus.  We will not know if retention played any part in Debtors' decision to award Defendants bonuses because the Trustee does not intend to put on evidence regarding Debtors' decision- making process.  See supra note 38.  But, given the allegations in the Complaint that "[c]ertain Bonus Payments were made less than a month after laying off 30% of its work force and less than a week after Debtors began their cost-cutting and restructuring efforts," it is not implausible that retention factored into Debtors' decision to make the Bonus Payments.  Compls. ¶ 26.  As argued by another Defendant, in nearly every bankruptcy case filed in this court, debtors file first day motions seeking permission to pay their employees unpaid prepetition wages and benefits and to continue those benefits postpetition in order to maintain workplace morale and to retain employees in the face of the bankruptcy filing.  See Hr'g. Tr. 150:15-153:16.  Indeed, debtors argue, and courts often agree when granting such motions, that employees are the "life blood" of a company.  That, as the Trustee counters, bonus plans are not (unsurprisingly) included in such motions does not belie the fact that debtors argue the benefit of maintaining employee morale and retention.

It seems self-evident that the awarding of a bonus in these circumstances may confer value

to the employer for purposes of § 548. Rewarding your best employees(s) with a

discretionary bonus (especially where the prospect of a discretionary bonus is included in

both the employer's employee handbook and the employee's offer letter) undoubtedly helps

to build the loyalty of the employee and increase morale, generally, if nothing else. Failure

to award the bonus, even if discretionary, could cause a company's best employees to seek

employment elsewhere. The Trustee's per se theory leaves no room for this outcome.[62]

The opinions relied on by the Trustee to support his per se theory do not stand for

that proposition and, in any case, neither involves a discretionary bonus.[63] In *Computer

Personalities*, the bankruptcy court determined after a trial that $155,000 paid to debtor's

former chief financial officer and his wife as bonuses were not for reasonably equivalent

value.[64] As stated by the court, defendants framed the issue at trial by asserting that the

transfers were made "pursuant to a contractually obligated bonus plan" and there was "no

allegation of any other value" received by the debtor in exchange for the transfers other than

---

[62] *Compare In re Nelco*, 264 B.R. 790 (Bankr. E.D. Va. 1999). In *Nelco*, the bankruptcy court cited
and applied the two-part *R.M.L.* analysis to an $800,000 bonus payment paid to a corporate debtor's
president. The court held that the debtor received "value" because the president
> operated the business, and when the bonus was paid management believed that Nelco
> had generated substantial profits for the company during 1995. Nelson was essential
> to Nelco's business operations: was the founder of the company, and it was through
> his efforts that Nelco operated as a successful computer leasing company until the
> discovery of the stealth fraud. In exchange for the bonus payment, *Nelco received the
> continuing goodwill and loyalty of Nelson in his capacity as president of the debtor.*
*Id.* at 813-14 (emphasis added). While the *Nelco* court does not label the bonus discretionary,
(i) there is no discussion of an employment agreement; (ii) there is no discussion of a pre-
existing metric, and (iii) the bonus was paid in December of the year in which the work was
performed.
[63] At argument, the Trustee argued that were I to conclude that a discretionary bonus could be for
value, I would be the first—and only—court to do so. Hr'g. Tr. 166:23-167:1. When pressed, the
Trustee came up with only two decisions which he says stand for the per se rule. Hr'g. Tr. 183:11-
184:7.
[64] *In re Computer Personalities Sys., Inc.*, No. 01-1017, 2002 WL 31988134, at *5 (Bankr. E.D. Pa. Dec.
23, 2002).

the CFO's performance under the contractual bonus plan.[65]  The sole evidence of the CFO's

terms of employment was an offer letter that contemplated an incentive bonus based on

demonstrated improvements in the sales to expense ratio according to a to-be-established

benchmark.[66]  There was no documentary evidence in the trial record that the bonus plan

existed or that the benchmark was established.[67]  The court ultimately concluded that no

contractual obligation actually existed, placing particular weight on the fact that the

defendants failed to testify at trial and finding the CFO's deposition testimony

"unconvincing."[68]  The court also found that even if there had been competent evidence the

plan existed, defendants failed to establish they met the purported metric.[69]  With respect to

proffered evidence regarding improved metrics that would support the bonus, the court

made the following statement, relied upon here by the Trustee:  "First, it places the cart

before the horse because absent a bonus plan pursuant to which [the debtor] was

contractually obligated to compensate [the CFO], the additional payments are a gratuity for

which [the debtor] received no greater value that [sic] it was entitled to receive in exchange

for payment of [the CFO's] base compensation."[70]  While seemingly declaratory in nature,

taken in context, this statement does not establish or reflect a per se rule, but rather a

specific conclusion based on the evidence (or lack thereof) and the court's findings after

trial.[71]

---

[65] *Id.* at *4.
[66] *Id.* at *1.
[67] *Id.* at *2.
[68] *Id.* at *2, *5.
[69] *Id.* at *5.
[70] *Id.*
[71] Given that the lack of reasonably equivalent value is an element of the cause of action and not a defense to it, some of the references in the decision to the defendant's failure to provide proof seem anomalous.

In *HDD Rotary Sales*, the court addressed the proper characterization of a $193,167 obligation on the debtor's books and records.[72] The debtor's plan agent argued the obligation was in connection with a stock redemption; the obligee (Miller) argued it represented bonus compensation.[73] After a trial on the merits at which multiple witnesses testified, including both the plan agent and Miller, the court concluded that (i) the obligation was for a bonus, not a stock redemption, (ii) the debtor orally promised Miller an annual bonus based on his sales and represented that Miller should expect to receive between $150,000 and $250,000 and (iii) the debtor transferred equipment and inventory to an entity owned by Miller in satisfaction of that obligation.[74] Because the obligation itself was not avoidable under any circumstances,[75] the bulk of the opinion is an analysis of whether the debtor's oral promise to pay Miller an annual bonus was enforceable such that the related transfer of equipment and inventory was in satisfaction of antecedent debt for purposes of § 548 (d)(2)(A).[76] Turning to state contract law, the court considered testimony that Miller would not have accepted a job with the debtor without a promise of a bonus and thus the promise was supported by consideration; it also concluded that the oral promise was not too indefinite and discretionary to be binding and it was therefore enforceable.[77] Alternatively,

---

[72] *In re HDD Rotary Sales, LLC*, 512 B.R. 877, 879 (Bankr. S.D. Tex. 2014).

[73] *Id.*

[74] *Id.* at 884.

[75] *Id.* at 886, n. 6. ("If HDD incurred the obligation to pay Mr. Miller the bonus when Mr. Haub made the oral promise, then this obligation is not avoidable because it would have been incurred while HDD was solvent. If the obligation was not incurred until Mr. Miller performed all of his 2009 sales ... then the $193,167.00 obligation is not avoidable because HDD received reasonably equivalent value by satisfying its existing legal obligation to pay Mr. Miller his annual bonus.").

[76] *Id.* at 886–87.

[77] *Id.* at 887-88. The Trustee seems to rely in this case for the proposition that past performance cannot be consideration for a discretionary bonus. But whether consideration exists to support an enforceable contract is a distinct question from whether value was conferred for purposes of § 548.

the court found Miller could have recovered under a quantum meruit theory.[78] Because the court found the existence of an obligation, it concluded that transfers made to satisfy that obligation were not avoidable.[79] This case, then, stands for the unremarkable proposition that payment of an antecedent debt constitutes reasonably equivalent value.

Satisfaction of a pre-existing obligation is "value" under § 548, but it does not follow that "value" *requires* the finding of an obligation. *R.M.L.* recognizes value where there is any benefit, direct or indirect, tangible or intangible, including benefits that are "technically not within § 548(d)(2)(A)'s definition of 'value.'"[80]  "Value," then, is an inherently factual question.  It is also an element of a fraudulent conveyance action on which the Trustee has the burden of proof.  I cannot conclude as a matter of law that the Bonus Payments conferred no value on Debtors simply because they were discretionary and without pre-enunciated performance metrics.  Thus, the Trustee's per se legal theory must fail.  The Motion to Dismiss the fraudulent conveyance counts is granted.

## II.    The Trustee Has Sufficiently Pled Insider Status.

Section 547 provides that a trustee may avoid a preferential transfer of property made between ninety days and a year before the petition date if the alleged transfer was to an "insider."[81]  The Bankruptcy Code defines "insider" in § 101(31).  If the debtor is a corporation, "insider" means "(i) director of the debtor; (ii) *officer of the debtor;* (iii) person in control of the debtor; (iv) partnership in which the debtor is a general partner; (v) general

---

[78]  *Id.* at 889.
[79]  *Id.* at 890.
[80]  *See R.M.L.*, 92 F.3d at 148.    *See also Mellon Bank, N.A. v. Metro Commc'ns, Inc.*, 945 F.2d 635, 647 (3d Cir. 1991), as amended (Oct. 28, 1991) ("Thus, the indirect benefits to Metro of this guaranty were the ability to obtain substantial credit due to its new association with the TCS corporate group and the synergy expected to result from the combination of these corporations.").
[81]  11 U.S.C. § 547(b)(4)(B).

partner of the debtor; or (vi) relative of a general partner, director, officer, or person in control of the debtor[.]"[82] "Officer" is not defined in the Bankruptcy Code.

In the Complaints, the Trustee alleges that Defendants Flanagan, Landon and Kearney are Senior Vice Presidents, and are therefore "officers."[83] Defendants argue that titles alone are insufficient to show officer status and that a plaintiff must plead additional facts showing that they actually exercise an officer's powers and responsibilities.[84] Additionally, Defendants argue that any allegation of insider status is contradicted by Debtors' schedules and statements of financial affairs (the "SOFAs"), in which Debtors did not list Defendants as insiders or officers.[85] Finally, Defendants note that Defendants' respective Offer Letters show that they were salespeople without any managerial responsibilities.[86]

In his Answering Brief, the Trustee counters by asserting that a person holding an officer title is presumptively an officer, and thus an insider.[87] In support of this argument, the Trustee predominantly relies on *In re Foothills Texas*.[88] The Trustee argues that a party may rebut that presumption by introducing evidence of a lack of managerial responsibilities, but the opportunity to present such evidence arises at trial and not at the motion to dismiss stage.[89] The Trustee further argues that Debtors' schedules and SOFAs are not dispositive

---

[82] 11 U.S.C. § 101(31)(B) (emphasis added).
[83] First Am. Compls., at ¶7.
[84] Mots. to Dismiss First Am. Compls., at ¶¶22-28.
[85] *Id.* at ¶ 26.
[86] *Id.* at ¶28.
[87] Mem. in Opp'n, at ¶¶37-38.
[88] *In re Foothills Texas, Inc.*, 408 B.R. 573 (Bankr. D. Del. 2009).
[89] Mem. in Opp'n, at ¶¶ 37-39.

as to officer or insider status, and, at any rate, are sworn statements by Debtor that do not constitute an admission against him, as a trustee.[90]

In *Foothills*, the court analyzed who is an officer under § 101(31) in the context of deciding whether to allow retention bonuses under § 503.[91] The court determined that two vice presidents were presumptively officers, and thus insiders, by looking at the plain meaning of the term.[92] The court noted, however, that "the mere title of a person does not end the inquiry" and that the presumption may be overcome by presenting evidence that the employee did not actually participate in management.[93] In *Foothills*, the court concluded after considering relevant evidence that debtors failed to rebut the presumption and found debtors could not make the retention payments.[94]

Unlike in *Foothills*, the question here is not whether Defendants were, in fact, officers of Debtors. The question here is whether a factual allegation in a complaint that an employee holds a "Senior Vice President" title is sufficient to draw a reasonable inference that the employee is an officer and therefore an insider for the purpose of § 547. I think it is. I concur with *Foothills*, that the plain meaning of "Senior Vice President" denotes an officer. And, I also agree that a person holding the title of Senior Vice President may be an officer, or he may not be depending on his responsibilities.

The Trustee alleges (though in somewhat conclusory fashion) that Defendants Flanagan, Landon and Kearney were each part of a management team and participated in management.[95] If Defendants do not agree with the facts that the Trustee has presented,

---

[90] *Id.* at ¶ 40.
[91] *Foothills*, 408 B.R. at 577-78.
[92] *Id.* at 579.
[93] *Id.*
[94] *Id.* at 585.
[95] First Am. Compls., at ¶7.

they may contest those allegations by way of a summary judgment motion or at trial.[96]  The information in individual employment agreements, the actualities of Debtors' workplace and the SOFAs may be introduced into evidence at that stage.  But, whether Defendants are actually officers by virtue of managerial duties or control over corporate decision-making is a factual inquiry that cannot be considered on a motion to dismiss.

Drawing all reasonable inferences in favor of the Trustee, as I must on this motion, I conclude that the allegations that each Defendant is a Senior Vice President together with allegations that he participates in management is sufficient to plausibly infer that Defendants Flanagan, Landon and Kearney were officers.  It follows that the Trustee has adequately pled insider status.  The Motion to Dismiss the preference count is denied.

### III.    Miscellaneous Transfers

Exhibit B to the Complaint filed against Defendant Flanagan also indicates that on the same day Debtor paid Mr. Flanagan his Bonus Payment, Debtor also transferred $1,003.03 to Mr. Flanagan as a 401K matching contribution.  In a footnote in their Opening Brief, Defendants assert that "the Trustee provides no allegations as to why or how this alleged transfer was fraudulent or otherwise avoidable."[97]  A review of the Flanagan Amended Complaint shows this is correct.  In his Answering Brief, also in a footnote, the Trustee states that "the Bonus Payments include 401K match payments made by the Debtors on amount of the bonuses paid to Defendants."[98]  While I am not encouraging

---

[96] Relying again on *Foothills*, the Trustee suggests that Defendants must rebut the presumption that they are officers.  I do not rule here on whether there is a presumption as all I must find is that there is a reasonable inference that Defendants are officers.  Further, I will note that in order to use the longer look back period of §547, the recipient of the transfer must be an officer.  As such, it appears that being an "insider" is an element of the cause of action and the Trustee will have the burden of proof on this issue.  For the same reason, however, I also need not decide that issue now.

[97] Opening Br., at ¶10 n. 7.

[98] Mem. in Opp'n., at ¶23 n. 5.

defendants to argue for dismissal by footnote and will not permit plaintiffs to amend complaints in a brief, in this instance I will include the 401K match in my above rulings. Accordingly, I will grant the Motion to Dismiss with respect to the 401K match transfer on the fraudulent conveyance count and will deny it with respect to the preference count.

Similarly, Exhibit B to the Complaint filed against Defendant Coyle indicates that in addition to the Bonus Payment made to Mr. Coyle, Debtor also transferred $1,221.00 to Mr. Coyle as a tax distribution.[99] In the Opening Brief, Defendant Coyle states "The Trustee provides no allegations as to why or how this alleged transfer was fraudulent or otherwise avoidable."[100] In his Answering Brief, also in a footnote, the Trustee points to paragraphs 29-31 of the Coyle Complaint describing the tax distributions. Because there are some allegations in the Complaint regarding the tax distribution and Defendant Coyle has not made any specific argument as to why these allegations are deficient, I will deny the Motion to Dismiss as to the tax distribution.[101]

*Conclusion*

An order will enter in each of these adversary proceedings consistent with the above rulings.

Dated: May 7, 2019

The Honorable Laurie Selber Silverstein
United States Bankruptcy Judge

---

[99] Compl. Ex. B.
[100] Opening Br., at ¶10 n. 6.
[101] In other adversary proceedings commenced by the Trustee he also seeks to avoid tax distributions. Certain defendants in those adversary proceedings moved to dismiss their respective complaints arguing that the allegations in the complaints were deficient. I will address those adversary proceedings in another decision.